# Dorris *versus* Erwin et al.

1. The conveyance or mortgage by a married woman of a chattel real to be thereafter acquired, is void. The Act of 1770, Purd. 460, pl. 13, prescribing the manner in which husband and wife may " dispose of and convey the estate of the wife or her right of, in or to any lands, tenements, or hereditaments whatsoever " only enables married women to convey or encumber their existing interest in realty held in possession, remainder or reversion.

2. A judgment on a scire facias sur mortgage is conclusive between the parties as to the amount of the debt intended to be secured by the mortgage, and that the interest of the mortgagor at the date of the mortgage should be taken in execution for the payment thereof.

3. A married woman executed a mortgage of a leasehold interest together with " all her right, title, interest, claim and demand, of, in to and out of said premises accruing or to accrue from a renewal of said lease." She afterwards procured an extension of the lease ; judgment was recovered upon a scire facias issued upon this mortgage, and the defendant's interest in the premises was sold at sheriff's sale. *Held*, that the sheriff's vendee took only the defendant's interest in the first lease, and the subsequently acquired leasehold was unaffected by the proceedings on the mortgage.

October 9th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas, No. 2, of *Allegheny county :* Of October Term 1882, No. 133.

Ejectment, by M. D. Erwin and Bertha V. his wife, in her right, against Ellen Dorris and Michael Dorris defendants, and Joseph Rupert, terre-tenant, for premises in the Ninth Ward of

Pittsburgh.    Ellen Dorris having filed a disclaimer of title, the suit was discontinued as to her.    The other defendants pleaded the general issue.

On the trial, before EWING P. J., the following facts appeared :—Upon June 1st 1876, F. L. Johnston and Bertha V. his wife (now Bertha V. Erwin, the defendant in error and plaintiff below) executed a mortgage to John Dorris of the premises in dispute, which she held by lease of one Schenley dated September 30th 1867, and to expire January 1st 1877.   This lease was placed of record sometime before its expiration.   The mortgage, in addition to the description of the leasehold interest covered by it, contained the following clause : " and also all the right, title, interest, claim and demand of said lessee of, in, to and out of said premises, accruing or to accrue from a renewal of said lease " but the lease itself contained no clause of renewal. Upon December 30th 1876, the last day of her term, Mrs. Johnston procured another lease for the same premises for sixteen years from January 1st 1877, at an annual rental of $165 : the rent reserved in the former lease being $84.

On November 30th 1878, the new lease and the mortgage were recorded in mortgage Book 246, pp. 25 and 26. John Dorris having died and default having been made upon the mortgage, his administratrix issued a scire facias thereon (which contained no mention of the second lease) obtained judgment for want of an affidavit of defence and issued a lev. fa. by virtue of which the sheriff took the premises in dispute in execution by description as follows : " all that certain lot and premises situate in the 9th ward, city of Pittsburgh, county of Allegheny and state of Pennsylvania, bounded and described as follows, viz : Beginning on the north side of Penn street, at the distance of 154 feet 13 inches from the north-east corner of Second and Rush streets ; thence, easterly along Penn street, 33 feet and ½ inch ; thence south 130 feet to the place of beginning.   Being a leasehold from Edward W. Schenley, et al. to said Bertha V. Johnston, dated Sept. 30th 1867, and recorded in Deed Book, vol. 253, page 153, to expire on January 1st 1877, and also all the right, title, interest, claim of said lessee of, in, to and out of said premises, accruing or to accrue from a renewal of said lease, and this mortgage after its execution and being recorded to be attached to and filed with said lease, and any renewal thereof in the office of lessors, as an encumbrance upon said lease until fully discharged and satisfied, and in said office the mortgage and lease still remains.   The property above described being the same as is now in the possession of said Johnstons.   Said described property having erected thereon several brick houses and tenements."

On January 10th 1879, the sheriff sold the same to Ellen

Dorris, who in some way obtained possession of the premises and who assigned her sheriff's deed to Michael Dorris, the plaintiff in error and defendant below. Mrs. Erwin (formerly Johnston) thereupon brought this suit, resting her title upon the lease of December 30th 1876. The jury, under the instruction of the court found a verdict " for the plaintiff for the land described in the writ with 6 cents damages and costs subject to the opinion of the court as to whether or not the leases and mortgage and proceedings thereon with the sheriff's deed given in evidence by the defendant, operate as a defence."

The court after argument entered judgment for the plaintiff on the verdict, EWING, P.J., filing the following opinion :—

It is not necessary to determine as to whether or not, the leasehold property mentioned in the mortgage, a town lot with store and dwellings thereon, is the subject of a mortgage under the Acts of Assembly.

The judgment on the scire facias is conclusive between the parties as to the amount of the debt, and that the interest of the mortgagor at the date of the mortgage is to be taken in execution for the payment of the debt. The judgment cures all formal defects and concludes defences. If on its face the mortgage is absolute, as a fee simple title, it would take any title acquired by the mortgagor up to the date of judgment : Hartman v. Ogborn, 4 P. F. Smith 120, and cases there cited. What interest then does the mortgage itself cover ? On its face it is the existing leasehold interest of a married woman in the property described, and the lease is recited as being dated 30th September, 1867, and the term expiring 1st January 1877. This lease was then of record as appears from the certificate in evidence, though that fact is not referred to in the mortgage, nor was it recorded with the mortgage. It had expired before the mortgage was recorded, and of course before the scire facias issued. That lease contained no agreement for renewal, and so far as appears from the evidence, Mrs. Johnston had neither legal nor equitable right to any term beyond the expiration of her existing lease at the 1st of January 1877.

Mrs. Johnston procured a new lease, dated 30th December 1876, running to 1st January 1893, on terms and conditions essentially different from those of the lease mentioned in the mortgage. There is nothing in the lease to indicate that this is a renewal of, or that it had any connection with the former lease. Nor is there anything to show that this new lease has any connection with the mortgage, except that a copy (apparently landlord's copy) is recorded in the same book and on the same day as was the mortgage. Nor is the new lease mentioned in the writ of scire facias.

The mortgage, in addition to the leasehold, mentioned as ex-

[Dorris *v.* Erwin.]

piring 1st January 1877, has the following clause : " And also all the right, title, interest, claim and demand of said lessee, of, in, to and out of said premises, accruing or to accrue from a renewal of said lease."

Is this sufficient to extend the lien of the mortgage to the after-acquired leasehold, by a married woman ? A mortgage of a mere expectancy or possibility, is void as such. At best it is but a contract to execute such mortgage. When the title has been acquired, to make such contract binding, there must be a good legal and equitable consideration : Bayler *v.* Commonwealth, 4 Wright 42, and cases there cited.

The general rule of law is that a married woman cannot convey or bind her estate. To hold her conveyance and mortgage good, we must find authority in the Acts of Assembly for her deed. On looking to the statutes on the subject, the wording appears to exclude either in words or by implication any authority to convey or mortgage anything beyond her existing interest.

In the absence of statutory authority her conveyance or pledge of a chattel real, to be thereafter acquired, would be void. The mortgage on its face shows the mortgagor to have been a married woman, and shows that her mortgage of anything beyond her existing right or interest was void : Baylor *v.* Commonwealth, supra. This fact stares in the face any purchaser and we are unable to see how the judgment could cure this patent defect of want of power, or how it can cure the failure to show on record any connection between the lease mortgaged and the new lease on which the plaintiff now claims to hold the property. This case differs essentially from the recent case of The Market Bank *v.* Daum and wife, in which this court held that the judgment on scire facias concluded the defendant from setting up the defence that land had been included in the mortgage by mistake. The mortgage in that was absolute, the description was not ambiguous, and Mrs. Daum was absolute owner in fee simple at the date of the mortgage. For these and other reasons we are of the opinion that the law is with the plaintiff on the questions reserved.

And judgment is ordered accordingly.

The defendant thereupon took this writ, assigning for error the action of the court in entering judgment on the reserved question for the plaintiff.

*C. C. Taylor* (with him *John Coyle*), for plaintiff in error.— That a mortgage of a leasehold such as the premises in dispute in this case is valid as between the parties thereto is settled : Building & Loan Association *v.* Bolster, 11 Norris 123 ; and an unrecorded mortgage of a leasehold is good as between the

parties : Hosie v. Gray, 21 P. F. S. 198.   But if the mortgage
was not valid the judgment on the scire facias was conclusive
and cured all defects in it : Hartman v. Ogborn, 4 P. F. S. 123.
The second section of the Act of February 24th 1770, prescrib-
ing the mode in which married women shall convey their
separate estates, uses the words "any lands, tenements, or
hereditaments whatsoever," and the Married Woman's Act speaks
of " every species and description of property whether real,
personal or mixed."   The mortgage in this case covers all right
and title of the mortgagor accruing or to accrue from a renewal
of said lease.   In Bayler v. Commonwealth, 4 Wright 37, there
was no vested interest involved at all, but a bare expectancy.
In this case the mortgagor had a vested interest and was in
possession.

*J. H. White*, for the defendant in error.—The new lease
was not a renewal of the old one, as a different and much larger
rent was reserved.   A sale upon a mortgage does not create any
further lien or estate than the land shall appear  to be mortgaged
for :   Act of 1705, § 8, Purd. 484, pl. 124.   The effect of the
sale is to transfer the estate to the purchaser as it existed in the
mortgagor at the date of the mortgage : Hartman v. Ogborn,
4 P. F. S. 123.   A married woman moreover can only mortgage
an existing interest : Bayler v. Commonwealth, 4 Wright 42.

Mr. Justice STERRETT delivered the opinion of the court,
November 20th 1882.
    The question in this case is as to the effect of the mortgage,
judgment and proceedings thereon, under which the plaintiff
in error defended his possession of the premises in controversy.
    In June 1876, Mrs. Erwin, the beneficial defendant in error,
united with her then husband, Francis L. Johnston, in execut-
ing a mortgage of a leasehold interest she then had in certain
premises described in the mortgage.
    As recited in the mortgage, the lease commenced in 1867
and expired January 1st 1877, before the mortgage was recorded,
and prior to the commencement of proceedings thereon.   The
lease itself contained no covenant or agreement for the renewal
or extension of the same, nor was it shown that the lessee had
any right whatever, legal or equitable, to demand either ; but,
at the expiration of the term, she procured a second lease for
sixteen years from that date, on terms and conditions essentially
different from those of the first.   There is nothing in the new
lease to indicate that it was a renewal of the former one or that
it had any connection therewith.   Nor did it appear, as the
learned judge says, that it had any connection with the mort-

gage except that a copy (apparently landlord's copy) is recorded on the same day and in the same book with the mortgage.

The only estate or interest the beneficial defendant had in the premises when she executed the mortgage was the leasehold first above mentioned. After accurately describing the lease and reciting that it expired January 1st 1877, the mortgage contains the following clause : "and also all the right, title, interest, claim and demand of same lessee, of, in, to and out of said premises, accruing or to accrue from a renewal of said lease." It is this clause alone that has given rise to the contention of the plaintiff in error that the mortgage was a valid pledge of the second as well as the first lease.

In December 1878, a scire facias, in which no mention is made of the new lease, was issued and prosecuted to judgment, execution and sale of the premises. The plaintiff in error, as alienee of the purchaser at sheriff's sale, obtained possession of the leasehold premises and claims to hold the same by virtue of the leases, mortgage and the proceedings thereon. The first lease as we have seen expired before the scire facias issued, and of course he cannot hold under it alone; nor can he successfully defend his possession under the second lease, unless the interest of the mortgagor therein was divested by the sheriff's sale.

The judgment in the scire facias was conclusive between the parties as to the amount of the debt intended to be secured by the mortgage, and that the interest of the mortgagor, at the date of the mortgage, should be taken in execution for the payment thereof. As has been observed, the only interest she had at that time was the unexpired residue of the term under the first lease, which ended January 1st 1877. The judgment also cured all formal defects and concluded all defences, except perhaps that arising from the common law disability of the feme covert mortgagor to pledge a leasehold interest which she did not then own, but might thereafter acquire; and it would have been conclusive as to that also, if the record had not shown that she was a feme covert, and as such executed the mortgage. If she had no power to convey or encumber that which she did not own,—that in which she had no interest, legal or equitable, vested or contingent; in other words, if her pledge of a chattel real, to be thereafter acquired, was void, the record was notice of her disability to the purchaser at sheriff's sale and those claiming under her. The learned president of the Common Pleas held that by reason of her inability to pledge that in which she had no present interest, coupled with record notice of that fact to the defendant below, the subsequently acquired leasehold was unaffected by the mortgage and proceedings thereon. In this we think he was right. At common law a feme covert

[Hacke's Appeal.]

is disabled to dispose of or encumber her real estate or to make any other contract obligatory on herself, because in law she, being one with her husband, has no separate existence, and also because of his supposed constraining influence. In England this disability was at first overcome by the device of fine and common recovery. Afterwards a statutory mode of conveyance, similar to ours, was adopted. Our Act of 1770, Purd. 460, pl. 13, prescribes the manner in which husband and wife may "dispose of and convey the estate of the wife, or her right, of, in or to any lands, tenements or hereditaments whatsoever." The object of this and subsequent legislation on the subject was to relieve married women from the disability incident to coverture, in so far only as was necessary to enable them to dispose of, convey or incumber any existing interest in realty, whether it be an interest in possession, reversion or remainder. It was never intended to enable them to convey or incumber real estate they may acquire by future purchase, but in which they have no present interest whatever; nor was it designed to empower them to enter into any contract in the nature of a covenant to stand seised, or to convey an interest in realty to be acquired by purchase in futuro. There is nothing in our legislation on the subject that can fairly be construed to authorize such contracts. As to all such acts their common law disability still exists.

Judgment affirmed.