National Maritime Union of America, C. I. O.
*v.* Paschaledes et al., Appellants.

Argued April 12, 1960. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-GOMERY, JJ.

*James H. Brennan,* with him *T. Robert Brennan, Paul R. Obert,* and *Brennan and Brennan,* for appellants,

*James Craig Kuhn, Jr.,* with him *Arnold D. Wilner,* and *Wilner, Wilner and Kuhn,* for appellee.

OPINION BY GUNTHER, J., June 15, 1960:

This appeal is from the judgment and order of the court below directing appellants, Leon Paschaledes and Georgia L. Paschaledes to pay electric bills covering a period of 33 months on the theory of unjust enrichment.

Plaintiff, National Maritime Union of America, C. I. O., filed a complaint in assumpsit in the County Court of Allegheny County to obtain restitution in the sum of $2,007.53 for electricity consumed at premises known as 118-122 Sixth Street in the City of Pittsburgh covering a period from July 1950 through April, 1953, during the time Leon Paschaledes and Georgia L. Paschaledes were the owners and lessors of the premises. The suit included not only appellants but also Taystee Bar-B-Q Corporation (whose stock was owned entirely by Turner, Devoe and Ross), Earl Turner, Chester M. Devoe and Louis H. Ross, individually and trading as Turner, Devoe and Ross, and Duquesne Light Company. At the conclusion of the case, all parties were absolved from liability except appellants, Leon Paschaledes and Georgia L. Paschaledes.

Plaintiff union maintains its national headquarters in New York City and has branch offices in leading ports throughout the United States including Pittsburgh, Pennsylvania. On or about October 20, 1948, plaintiff leased from Taystee Bar-B-Q Corporation for a term of five years office space located at 124 Sixth Street. Taystee Bar-B-Q was a tenant for this entire building and had a right to sublet any portion thereof. The property at 124 Sixth Street was managed by the partnership referred to above. The lease provided that electrical current used by the plaintiff union would be

paid by Taystee Bar-B-Q. This building (124 Sixth Street) was owned by an individual named Monteverde. The premises known as 118-122 was owned by the partnership which controlled Taystee Bar-B-Q Corporation.

From December 13, 1948 to April 14, 1953, the entire electric bill for both buildings was made out by Duquesne Light Company in the name of Turner, Devoe and Ross but, for some reason not explained in the record, these bills found their way into the national office of the maritime union, which paid the bills under the mistaken assumption that it was obligated for them. Subsequent to April 14, 1953, an investigation was started by the national union and it discovered that these bills for electricity should have been paid by others connected with said buildings. By this time, the national union paid out a total of $3,161.30.

On July 27, 1950, the building known as 118-122 was sold by Turner, Devoe and Ross to appellants, at which time all leases covering occupancies in that building were assigned to appellants. At the same time, the electrical supply for the branch office of the maritime union, which previously had been connected to a meter servicing tenants (including the partnership of Turner, Devoe and Ross) in the building at 118-122 Sixth Street, was disconnected and immediately hooked up to the meter of Taystee Bar-B-Q Corporation which serviced the building known as 124 Sixth Street. Taystee Bar-B-Q thereafter continued to pay such electrical service furnished through its own meter.

When the national maritime union discovered that it had paid for the entire electrical service covering both buildings, it contacted Taystee Bar-B-Q, the lessor, and the sum of $1,153.77, for the period from December 13, 1948 to July 27, 1950, was paid back to the union. This left a balance of $2,007.53 covering the period

from July 27, 1950 to April 14, 1953 which remained unpaid and for which suit was brought.

At the time of closing for the building at 118-122 Sixth Street, there was some discussion with appellants and they were told to have the electricity transferred to their names. This was apparently agreed to but the transfer did not take place until June, 1953, retroactive to April 14, 1953. This was brought about because appellants sold this building on May 1, 1953 to another party. However, during the period from July 27, 1950 to April, 1953, appellants collected all rents from tenants in this building.

Upon the conclusion of the trial, the court below absolved Duquesne Light Company from liability because it furnished the services here involved and was paid for such services. These payments were not excessive and were in accordance with tariffs and rates established by the Public Utility Commission. Since Taystee Bar-B-Q Corporation previously made restitution for the period from December 13, 1948 to July 27, 1950, it was absolved of further liability, and the partnership of Turner, Devoe and Ross were also absolved since they sold the building to appellants on July 27, 1950. Liability for the amount involved was imposed on appellants on the theory of unjust enrichment. Hence this appeal.

On this appeal, appellants deny liability because the plaintiff failed to prove that there was a duty to furnish electricity to their tenants by appellants either by agreement or by implication of law, and that plaintiff failed to prove that appellants received the benefit of the electricity consumed.

Appellants admitted that during the time in question, they received all the benefits of rentals from the property at 118-122 Sixth Street. The testimony also disclosed that, at least in the case of one tenant, ap-

pellants agreed to a rebate of $10.00 per month for electricity consumed on the premises. The testimony shows that when appellants purchased the property, they were told to take care of the utilities and that they agreed to this. Appellants do not deny this but claim only a lack of memory as to such conversation. Furthermore, when the electrical account with Duquesne Light Company was finally transferred on to their names, they did pay for all services for at least a month. The testimony of the representative of Duquesne Light Company disclosed that all together there were three meters on the premises. One of these serviced Taystee Bar-B-Q Corporation and the other two serviced seven tenants in the building. If each tenant was obligated to pay for the electrical current he used, obviously a meter would have been installed to measure the current consumed. The testimony of the Duquesne Light Company representative also disclosed that the second meter on the premises covered the demands of the tenant known as Carnival Lounge and that the third meter, 7FIP-135, serviced the demands of all other tenants in the building. From all this evidence the presumption was strong that the landlord furnished electrical current, as a part of the rental consideration, to the tenants in the building. With this presumption established, the burden of presenting evidence to the contrary was upon the appellants, but they produced no such evidence.

Section 1 of the Restatement of the Law of Restitution provides: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." The theory under which plaintiff sought a recovery of the payments made was that of a benefit conferred upon appellants under a mistake of fact. An owner is required to make compensation for payments made to discharge claims

against his property. *Haverford Loan & Building Association of Philadelphia v. Fire Association of Philadelphia,* 180 Pa. 522, 37 A. 179; *Iron City Tool Works v. Long,* 4 Sadler 57, 7 A. 82; *Close v. Derbyshire,* 165 Pa. Superior Ct. 419, 68 A. 2d 456.

The equitable doctrine of restitution does not depend upon any formal contractual relations between the parties. Whatever merit there might be to the contention that there is no common law duty to provide electricity between a landlord and tenant has no application here. The fact is that someone had to pay for the current furnished. There is no evidence here that the tenants were under a duty to pay and the plaintiff, by mistakenly paying, conferred an economic benefit on appellants. Under the principles of unjust enrichment, restitution was properly ordered.

Judgment is affirmed.