In re Anthony STENDARDO and Loretta Stendardo, Debtors.

Anthony STENDARDO and Loretta Stendardo, Plaintiffs,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, Defendants.

Bankruptcy No. 89–10581S.
Adv. No. 90–0375S.

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 29, 1990.

Irwin Trauss, Community Legal Services, Inc., Philadelphia, Pa., for debtors—Anthony and Loretta Stendardo.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

Joan Pinsky Brodsky, Federman and Phelan, Philadelphia, Pa., for defendant—Federal Nat. Mortg. Ass'n.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

A. INTRODUCTION

Before us is a Complaint filed by ANTHONY STENDARDO and LORETTA STENDARDO, the Debtors in the underlying joint Chapter 13 case, commenced on February 10, 1989 ("the Debtors"), objecting to the secured proof of claim filed in this case by the Defendant, FEDERAL NATIONAL MORTGAGE ASSOCIATION

("FNMA"). The parties have filed a Stipulation of Facts limiting the questions before the court to one issue: whether FNMA is entitled to have expenditures made by it subsequent to a foreclosure judgment on behalf of the Debtors for real estate taxes, Federal Housing Administration mortgage insurance ("FHA ins."), and hazard insurance (collectively these items are referred to as "the Costs") included in its secured proof of claim.

We conclude that FNMA is entitled to include these expenditures in its allowed secured claim on two alternative grounds. Firstly, we reject the Debtors' novel claim that the merger of the mortgage into the foreclosure judgment eliminates those provisions of the mortgage entitling FNMA to reimbursement for its payment of the Costs. Secondly, assuming *arguendo* that such merger was effected, we find that the Costs would be reimbursable to FNMA in any event, because the legal obligation to pay for these items rests upon the Debtors and it would constitute impermissible "unjust enrichment" to permit the Debtors to escape liability to recompense FNMA for these expenditures on their behalf. Therefore, we value FNMA's allowed secured claim at $9,955.70 and, since this case has been outstanding for an inordinate period, give the Debtors only a limited time-period to propose a confirmable plan or face dismissal of this case.

## B. PROCEDURAL HISTORY

The underlying bankruptcy case is now almost 18 months old. It was initially delayed by the failure of the Debtors to file all of the necessary papers, including a Plan of Reorganization ("the Plan"), until September 26, 1989. *See* Bankruptcy Rules ("B.Rule") 1007(c) and 3015; and Local Bankruptcy Rule 1007.2 (Chapter 13 Statement, Plan, and Summary Sheet must be filed within 15 days after a bankruptcy filing). Because of the delay in these filings, the meeting of creditors pursuant to 11 U.S.C. § 341 was not conducted until January 5, 1990, and the initial hearing to consider confirmation of the Plan was not scheduled until April 17, 1990.

Despite these previous delays, the Debtors' counsel advised us, at the hearing on April 17, 1990, that he had not yet filed a planned adversary proceeding attacking FNMA's claim. We entered an Order of April 18, 1990, requiring that any such proceeding be filed by May 1, 1990, and that the trial of this proceeding and what it was hoped would be a final confirmation hearing were scheduled on June 14, 1990. The Debtors nevertheless did not file this proceeding until May 10, 1990, beyond the time-limit established in our Order of April 18, 1990. At the request of FNMA, we continued these matters one last time until June 28, 1990.

On June 28, 1990, the parties presented us with a Stipulation of Facts which resolved all but the one issue of FNMA's entitlement to reimbursement for the Costs and recited all of the facts deemed pertinent to the resolution of that issue. We entered a briefing Order which contemplated submission of this proceeding to us by August 15, 1990. The confirmation hearing was continued until September 4, 1990.

Prior to preparing this Opinion, we directed the parties to attend a settlement conference on August 16, 1990, before the Honorable Judith H. Wizmur of the District of New Jersey, sitting by special designation. No progress was reported in this matter by Judge Wizmur despite her numerous past successes, necessitating the drafting of this Opinion.

## C. FACTUAL HISTORY

The facts of this proceeding are set forth in some detail in the Stipulation of Facts, revealing that the Debtors' instant bankruptcy filings, delayed at every turn by the Debtors, is not their first association with this court.

The Debtors are owners of residential realty located at 2716 East Birch Street, Philadelphia, Pennsylvania ("the Property"). Approximately twenty (20) years ago, on October 26, 1970, Pasquale and Kathryn Stendardo, individually and as trustees for Debtor Anthony Stendardo, then a minor, obtained a consumer loan

from Bogley, Harting, Mahoney and Lebling, Inc. ("BHML"). In connection with that loan, they signed a note in BHML's favor in the amount of $7,250.00 payable over twenty (20) years at an interest rate of eight and one-half (8½%) percent per annum. The note was secured by a mortgage against the Property. On November 17, 1970, shortly after the transaction was consummated, the note and mortgage were assigned by BHML to FNMA. By deed dated June 7, 1972, ownership of the Property was transferred to the Debtors.

The Debtors filed their first voluntary Chapter 13 petition, Bankruptcy No. 85–02181S, on May 30, 1985 ("the 1985 Case"). FNMA filed a proof of secured claim for mortgage arrearages on the 1970 loan in that case in the amount of $1,782.65.[1] No objections were made to the proof of claim filed by FNMA in the 1985 Case.

On July 24, 1985, FNMA obtained relief from the automatic stay in the 1985 Case to foreclose on the Property. It ultimately filed a Complaint in Mortgage Foreclosure on January 9, 1987, only after the 1985 Case was converted to a Chapter 7 case on October 16, 1986. FNMA obtained a default judgment on its Complaint on February 11, 1987, in the amount of $6,391.09.

The Debtors received a Chapter 7 Discharge in the 1985 Case on January 10, 1989. The Debtors filed their instant Chapter 13 case one month later on February 10, 1989.[2] On January 2, 1990, FNMA filed a proof of claim in this Case the amount of $14,026.64. FNMA's proof of claim includes arrears, late charges, fees and costs and escrow deficits.

The parties have now agreed that FNMA's allowable secured claim is $5,803.08 [3] plus any expenditures made by FNMA on behalf of the Debtors for the Costs which we determine may be included as part of FNMA's allowed secured claim.

The disputed issue of the Costs arose when, between February 18, 1987, and June 14, 1990, FNMA paid real estate taxes due against the Property in the amount of $1,804.25; FHA ins. premiums in the amount of $25.37, and hazard insurance premiums on the Property in the amount of $2,323.00.[4] FNMA's total expenditures for the costs thus equal the sum of $4,152.62. The parties stipulated that the Debtors did not request FNMA to make any of these payments on their behalf, but that FNMA was required to make the above-described payments to maintain the FHA mortgage insurance on the loan.

FNMA's mortgage on the Property sets forth the payments required to be made by the Debtors in addition to payments of principal and interest. These payments include escrows for insurance and taxes on the Property. The terms of the mortgage also provide that FNMA may make any payments for these purposes not made by

---

1. Therefore, FNMA has apparently consistently accepted the Debtors as successors to the obligors on the 1970 loan. *Compare In re Taylor,* 96 B.R. 584, 589–91 (Bankr.E.D.Pa.1989).

2. The Debtors' counsel, in his Brief, claims that the correct filing date was February 1, 1989. The petition indicates that this contention is in error and that the filing date was in fact February 10, 1989.

   The sequential filing of a Chapter 13 case after a Chapter 7 case is often characterized as a "Chapter 20" case filing. Some courts have refused to allow mortgage obligations impacted by a Chapter 7 discharge to be affected by a later "Chapter 20" filing. *See In re Johnson,* 904 F.2d 563 (10th Cir.1990). *But see In re Metz,* 820 F.2d 1495, 1498 (9th Cir. 1987). *See generally,* J. MORRIS, *Serial Bankruptcies and Good Faith in Chapter 20,* VOL. I, NO. 4 FAULKNER & GRAY'S BANK. L. REV. 48 (1990).

3. The parties arrived at the $5,803.08 figure by computing the sum of the following entries:

| | |
|---|---|
| $6,391.09 | Judgment Amount |
| + 757.09 | Interest on Judgment from 2/11/87 to 2/10/89 at 6% per annum |
| + 754.90 | Court costs and unreimbursed sheriff's fees |
| −1,000.00 | Truth-in-Lending Act set-off |
| −1,100.00 | Postpetition payments |
| TOTAL    $5,803.08 | |

4. No explanation is provided as to why these premiums are so high that they exceed the taxes. However, the Debtors do not dispute the reasonability of these premiums, nor do they contest the validity or amount of the other charges.

the Debtors and necessary to protect FNMA's security under the mortgage, which payments then may be added to the loan balance. The following are the relevant mortgage provisions so providing:

2. That in order to more fully protect the security of this mortgage, the Mortgagor together with, and in addition to, the monthly payments of principal and interest payable under the terms of the note secured hereby, covenants to pay to the Mortgagee, on the first day of each month until the said note is fully paid, the following sums:

(a) *An amount sufficient to provide the holder hereof with funds to pay the next mortgage insurance premium if this mortgage and the note secured hereby are insured, ...*

(b) *A sum equal to the ground rents, if any, next due, plus the premiums that will next become due and payable on policies of fire and other hazard insurance covering the premises secured hereby, plus taxes and assessments next due on the premises covered hereby* (all as estimated by the Mortgagee) less all sums already paid therefor divided by the number of months to elapse before one (1) month prior to the date when such ground rents, premiums, taxes and assessments will become delinquent, such sums to be held by Mortgagee in trust to pay said ground rents, premiums, taxes, and special assessments; that the Mortgagor will pay all ground rents, taxes, assessments, water rates, and other governmental or municipal charges, fines or impositions, for which provision has not been made hereinbefore and that he will promptly deliver the official receipts therefor to the Mortgagee, and in default thereof the Mortgagee shall have the right to pay same. *The Mortgagee shall have the right to make any payment which the Mortgagor should have made, and the Mortgagee may also pay any other sum that is necessary to protect the security of this instrument. All such sums, as well as all costs, paid by the Mortgagee pursuant to this instrument, shall be secured hereby and shall bear interest at the rate set forth in the note secured hereby from the date with such sums are paid.*

AND PROVIDED ALSO, that when as soon as the principal debt and sum hereby secured shall become due and payable aforesaid, or in case default shall be made in the payment of any installment of principal or interest, or any monthly payment hereinabove provided for, ..., it shall and may be lawful for said Mortgagee forthwith to bring an action of Mortgage Foreclosure, ..., or to institute other foreclosure proceedings upon this mortgage, and to proceed to judgment and execution *for recovery of said principal debt, all interest thereon, all sums advanced for payment of any ground rent, taxes, water rents, charges, claims or insurance premiums as aforesaid....*

## D. DISCUSSION

### 1. THE DEBTORS' OBLIGATION TO PAY THE COSTS IS NOT EXTINGUISHED BY THE MERGER OF THE MORTGAGE OBLIGATION WITH FNMA'S FORECLOSURE JUDGMENT.

The parties' positions are easily summarized. The Debtors argue that FNMA is not entitled to reimbursement of the Costs because, once FNMA obtained the foreclosure judgment, the mortgage merged into the judgment. Consequently, the Debtors argue, all of the terms of the mortgage, including those requiring the Debtors to maintain insurance on the Property and remain current on real estate taxes, disappeared. According to the Debtors, FNMA made these payments on its own behalf to protect its security on the Property and not on behalf of the Debtors who, in their minds, were no longer obligated to make these payments. Not surprisingly, FNMA argues that it is entitled to reimbursement of its payments for the Costs on the ground that they were actually obligations of the Debtors paid by FNMA.

The doctrine of merger of mortgage obligations with judgments in mortgage fore-

closure is simply stated in black-letter law as follows: "[t]he mortgage is merged in a judgment entered in a mortgage foreclosure action." 25 P.L.E. 85 (1960). Merger of a cause of action into a judgment is an old and well-established doctrine and is based

> upon the principle that a superior right covers an inferior right, or that a security of a higher nature extinguishes a security of an inferior nature, and that a judgment is of a higher right or security than an ordinary cause of action. An additional reason suggested for the doctrine of merger is that it would be vexatious to one party and of no benefit to the other to permit the existence of both the original cause of action and the judgment rendered thereon. Sometimes, the doctrine of merger is based upon an election by the creditor to take such a judgment, in which case the extinguishment of his cause of action by the recovery of the judgment is presumed to have been intended by him.

46 AM.JUR.2d 552–53 (1969) (footnotes omitted).

Pennsylvania caselaw has long accepted the doctrine of merger. In *Sykes v. Gerber*, 98 Pa. 179 (1881), a borrower furnished his lender with cash and a note in "settlement in full" of the original debt. The lender attempted to sue on the original debt when the borrower failed to pay the note when due. The court refused to permit the lender's cause of action, stating that

> [t]he general rule is that it is against the policy of the law to permit a plaintiff to prosecute in a second action for what was included in and might have been recovered in the first, because it would harass the defendant and expose him to double costs.... The judgment ended forever the right of action on that note, and now the plaintiff cannot go back and maintain a suit for the original debt....

*Id.* at 183.

Similarly, in *Murray v. Weigle*, 118 Pa. 159, 164, 11 A. 781, 782 (1888), the court concluded that the judgment on the mortgage "is conclusive between the parties to the mortgage as to its amount, and that the interest of the mortgagor at the date of the mortgage should be taken in execution for the payment thereof: *Dorris v. Erwin*, 101 Pa. 239 [ (1882) ]." The court further concluded that "[a]fter a *scire facias* on a mortgage has ripened into a judgment, the mortgage is merged in it, and even if null and void is no longer open to attack: *Hartman v. Ogborn*, supra [54 Pa. 120 (1867) ]."

More recently, the Supreme Court of Pennsylvania, in *Lance v. Mann*, 360 Pa. 26, 28, 60 A.2d 35, 36 (1948), refused to consider a petition to reduce the amount of a judgment entered in a suit for money due on the sale of a partner's interest and concluded that

> [i]t is elementary that judgment settles everything involved in the right to recover, not only all matters that were raised, but those which might have been raised (citation omitted).... The cause of action is merged in the judgment which then evidences a new obligation.

This court first applied the issue of merger doctrine to limit the post-judgment interest on a mortgaged obligation to the six (6%) percent statutory rate, 41 P.S. § 202, despite the presence of a higher rate in the mortgage documents, in *In re Herbert*, 86 B.R. 433, 436–37 (Bankr.E.D.Pa. 1988), *aff'd sub nom. Herbert v. Federal National Mortgage Ass'n*, 102 B.R. 407 (E.D.Pa.1989). *Herbert* has been consistently followed by all of the judges of this court and by several bankruptcy judges sitting in the Western District of Pennsylvania as well. *See, e.g., In re Presque Isle Apartments, L.P.*, 112 B.R. 744, 747–48 (Bankr.W.D.Pa.1990) (BENTZ, J.); *In re Klein*, 106 B.R. 396, 401–02 (Bankr.E.D.Pa. 1989); *In re Crane Automotive, Inc.*, 98 B.R. 233, 236 (Bankr.W.D.Pa.1989) (MARKOVITZ, J.); and *In re Rorie*, 98 B.R. 215, 218–19 (Bankr.E.D.Pa.1989) (FOX, J.); and *In re Ocasio*, 97 B.R. 825, 826 n. 1 (Bankr. E.D.Pa.1989) (TWARDOWSKI, CH. J.).

In *Herbert*, 86 B.R. at 434, also involving the present Debtors' counsel and FNMA as a party defendant, we were compelled to determine the amount of FNMA's legitimate claim against proceeds of a private

sale of the debtor's home. We concluded that the mortgagee was only entitled to a claim bearing post-judgment interest at the legal rate rather than the mortgage rate because " '[t]he mortgage is merged in a judgment entered in a mortgage foreclosure action' in Pennsylvania." *Id.* at 436, quoting 25 P.L.E. 85, *supra,* and citing *Murray, supra,* 118 Pa. at 164, 11 A. at 782; and *Hartman, supra,* 54 Pa. at 122–23.

Judge Fox, in *Rorie, supra,* 98 B.R. at 218, cited *Herbert, supra,* and *In re Smith,* 92 B.R. 127, 129 (Bankr.E.D.Pa.1988), *rev'd in part on other grounds sub nom. Smith v. Kissell Co.,* 98 B.R. 708 (E.D.Pa.1989), a later decision of ours following *Herbert,* with approval, stating that "[t]he entry of judgment merges the obligation on the mortgage into the judgment."

As apparently would the other judges deciding the cases cited three paragraphs *supra,* we agree with the Debtors insofar as they maintain that the doctrine of merger requires that the mortgage merges into the judgment and that the post-judgment rate of interest on the mortgage must be reduced to six (6%) percent. FNMA concedes this point. *See* page 835 n. 3 *supra* (calculation of post-judgment interest). It is unclear, however, whether the merger doctrine mandates that *all* terms of the mortgage become null and void after the entry of a judgment. We think not.

As stated in 46 AM.JUR.2d, *supra,* at 554 (1969),

> one of the well-recognized exceptions or limitations of the doctrine of merger is that a merger takes place only insofar as the judgment determines, or may have determined, the rights of the parties (footnote omitted).

By way of example, the general rule is that "a lien securing a debt which becomes merged in a judgment is not affected by such merger" (footnote omitted). *Id.* at 557. *See Geiger v. Metz,* 11 N.J.Super. 134, 78 A.2d 152 (1950). Thus, although a mortgage merges into a judgment, the lien created by the mortgage remains despite the presence of the judgment.

In *Rorie, supra,* 98 B.R. at 219, our colleague Judge Fox concluded that, "[u]nless the mortgage agreement provides otherwise, postjudgment interest accrues at the 'lawful rate' ..." It follows, therefore, that, even though the mortgage merged into the judgment, if the mortgage had set the post-judgment interest at a certain rate, the rate established by the mortgage would have been applied post-petition. Clearly, that term of the mortgage would then survive merger. Even more to the point was the holding by Judge Fox in *Rorie* that charges for post-judgment water and sewer bills could be included in the mortgagee's allowed secured claim because the mortgage provided for same, but that inspection fees could not be included only because the underlying mortgage did not make the debtor liable for such fees. *Id.* at 221. This reasoning would have been inappropriate had Judge Fox concluded that all terms of the mortgage merged into and were thus eliminated by the foreclosure judgment.

Similarly, Judge Bentz, in *Presque Isle, supra,* 112 B.R. at 747, concluded that

> [a] mortgage merges with a judgment in foreclosure. *In re Herbert,* 86 B.R. 433 (Bankr.E.D.Pa.1988). Once a claim is reduced to judgment, the legal rate of interest applies *unless the documents evidence a clear intent to continue the contractual rate of interest post-judgment* (emphasis added).

Again, this reasoning is inconsistent with the premise that the foreclosure judgment causes all provisions of the mortgage to be extinguished.

Thus, we conclude that, while the interest-rate terms of a mortgage merge into the foreclosure judgment, this merger of a mortgage into a foreclosure judgment does not render all of the other provisions of the mortgage null and void. The mortgage between FNMA and the Debtors, as set forth at pages 835–836, *supra,* clearly provides that the Debtors assumed responsibility for, *inter alia,* the taxes and insurance charges due on the Property. FNMA made these payments on their behalf. The mortgage provides that the amounts paid

by FNMA for these charges may be included as part of the loan and secured by the mortgage. Therefore, since these terms were not rendered null and void by the doctrine of merger, the Debtors are required to reimburse FNMA for the costs.

We further note that the parties have stipulated that payment of all of the Costs was required for FNMA to keep the FHA's insurance of the mortgage in effect. It is doubtful that the Debtors would be willing to forego the benefits of being mortgagors on an FHA-insured mortgage, such as the right to request an assignment of their mortgage to the United States Department of Housing and Urban Development ("HUD"), if they become in arrears on the mortgage. *See generally In re Santos,* 97 B.R. 227, 232–34 (Bankr.E.D.Pa.1989); and *In re Zaidi,* 78 B.R. 410, 411–12 (Bankr.E.D.Pa.1987). It would appear impossible to retain the FHA-insurance aspect of this loan, which the Debtors are apparently not prepared to renounce, if the conditions of that program are not met.

We are not troubled by the fact that some of the payments of the Costs were made by FNMA post-petition. Chapter 13 of the Bankruptcy Code requires that debtors must maintain payments on a secured claim on which the last payment would be due after the final plan payment during the pendency of the mortgage. 11 U.S.C. § 1322(b)(5). This includes all payments and other obligations under the mortgage falling due post-petition. Where, as here, the Debtors seek to liquidate their entire mortgage balance under the loan, all payments falling due post-petition must be liquidated. The Debtors do not hesitate to deduct their post-petition payments toward this obligation from the amount of FNMA's proof of claim. See page 835 n. 3 *supra.* Therefore, FNMA is entitled to assert a claim including such post-petition obligations. *See also* the cases cited at pages 840–841 *infra.*

In their Reply Brief, the Debtors attempt to analogize the facts of the instant proceeding to those of *In re Carter,* Bankr. No. 89–13490S, 1990 WL 92456 (Bankr.E.D.Pa. June 28, 1990), wherein we declined

to permit a mortgagee to "correct" a state-court foreclosure judgment which mistakenly failed to include pre-judgment escrow arrearages in the judgment. We reasoned that to do so would constitute an impermissible modification of a state-court judgment. *See, e.g., Heiser v. Woodruff,* 327 U.S. 726, 736, 66 S.Ct. 853, 857, 90 L.Ed. 970 (1946); *Kelleran v. Andrijevic,* 825 F.2d 692, 694 (2d Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988); and *In re Garafano,* 99 B.R. 624, 630–31 (Bankr.E.D.Pa.1989). We thus rejected the *Carter* mortgagee's efforts to urge us to effectively re-assess the damages in the state-court foreclosure action, questioning the aspect of Judge Fox's decision in *Rorie* where he did so re-assess damages. 98 B.R. at 219–21.

However, the Costs in issue here arose and were paid by FNMA *after* the entry of the foreclosure judgment. Therefore, we are doing no more than adding post-judgment costs to the state-court judgment, which we proceeded to do in both *Herbert,* 86 B.R. at 438; and *Smith,* 92 B.R. at 132–33, and the parties have agreed to do here. See page 835 n. 3 *supra.* The attempt of the *Carter* mortgagee to add pre-judgment liabilities to its claim therefore was, in our view, clearly distinguishable from what FNMA attempts to do here.

Thus, we reject the Debtors' argument that the doctrine of merger excuses them from their contractual liability to reimburse FNMA for the Costs in issue, and we conclude that the Costs may in fact be included in FNMA's proof of claim.

2. ASSUMING *ARGUENDO* THAT THE MORTGAGE WERE INVALIDATED BY FNMA'S FORECLOSURE JUDGMENT, LIABILITY FOR THESE EXPENDITURES WOULD LIE UPON THE DEBTORS, AND IT WOULD CONSTITUTE "UNJUST ENRICHMENT" TO DENY FNMA ITS RIGHT TO OBTAIN REIMBURSEMENT FROM THE DEBTORS FOR PAYING ANY OF THE COSTS ON THEIR BEHALF.

Even if we assume *arguendo* that the terms of the underlying mortgage

would in fact be unenforceable due to the impact of the doctrine of merger, we question whether the Debtors would prevail in avoiding liability to reimburse FNMA for payment of the Costs. The Debtors seem to assume that, if the mortgage were not present, FNMA would have no basis on which to render them liable for the Costs. Such an assumption would be incorrect.

We note, at the outset, that the Debtors have never asserted that any elements of the Costs were not actually paid by FNMA, were not for their direct benefit, were not remitted in utmost good faith belief by FNMA of its need and right to do so, and were not reasonable. The aura of extreme lack of equity of the Debtors' position, which presents itself as an attempt to extract a windfall from an innocent party by the means of a legal technicality, hangs heavily on their shoulders. It is with little sympathy or regret that we conclude that the legal technicalities lack merit.

In *In re Rowe*, 110 B.R. 712, 724–28 (Bankr.E.D.Pa.1990), we recently considered the right of a vendor of realty, whom we placed into the shoes of a mortgagee, *id.* at 723, to obtain reimbursement from her vendee for certain expenditures made by the vendor in the context of a relationship in which the home-made contract was silent regarding the relative obligations of the parties to make payments for certain expenditures falling due against the realty.

Specifically, in *Rowe*, the vendor sought to include in its secured proof of claim, over the debtor/vendee's objection, payments that the vendor made on behalf of the debtor for real estate taxes and water and sewer charges. We permitted the vendor to include the taxes and water and sewer charges in her allowed secured claim and concluded that the debtor's "attempts to avoid the imposition of charges for taxes and water and sewer charges is, ... totally inconsistent with her contention that she should be treated as the equitable owner of the Premises." *Id.* at 725. We found the relevant law to be as follows:

> With a fair degree of consistency, the Pennsylvania decisions have followed the black-letter law set forth in 77 AM. JUR.2d 489 (1975), as follows:
>
>> As between the parties to a contract for the sale of land, in the absence of a specific statute or an express or implied agreement, the party who is in possession or entitled to possession at the time when a tax accrues or becomes a lien is ordinarily bound to pay such tax where it accrues or becomes a lien after the making of the contract and before a conveyance, unless there has been a delay in making the conveyance caused by the fault of the other party.
>
> .    .    .    .    .
>
> The Third Circuit Court of Appeals, in *United States v. Certain Parcels of Land in Philadelphia, PA.*, 130 F.2d 782, 785 (3d Cir.1942), follows the black-letter rule set forth above, while noting that, as of that date, it was difficult to find a line of Pennsylvania cases so holding. Since that date, the Pennsylvania Supreme Court, citing the above Third Circuit decision, has expressed this black-letter law to indeed be the law of Pennsylvania, *In re Appeal of Board of School Directors of Owen J. Roberts School District*, 500 Pa. 465, 472–73, 457 A.2d 1264, 1267–78 (1983); and *Appeal of Baltimore & O. R.R.*, 405 Pa. 349, 354, 175 A.2d 841, 843–44 (1961).

*Id.* at 724.

In *Owen J. Roberts, supra,* 500 Pa. at 470, 457 A.2d at 1267, the court concluded that "taxes are determined by ownership. It has long been the policy of the law that the real owner should be taxed." *Accord Baltimore & O. R.R., supra,* 405 Pa. at 355, 175 A.2d at 843. We also reached a similar conclusion regarding water and sewer charges paid by the vendor. *Id.* at 726. *See also, e.g., In re Capodanno,* 83 B.R. 285, 289 (Bankr.E.D.Pa.1988) (debtor/vendees under a home-made installment land sale contract were compelled to pay accrued and future real estate taxes, insurance, and water and sewer rents); and *In re Fox,* 83 B.R. 290, 303 (Bankr.E.D.Pa. 1988) (debtor/vendee under a similarly home-spun installment land sale contract

must pay all accrued and future real-estate taxes, hazard insurance, and water and sewer bills falling due as to the premises in order to adequately protect the vendor); and *In re Crompton,* 73 B.R. 800, 810–11 (Bankr.E.D.Pa.1987) (debtors ordered to reimburse the mortgagee for taxes and insurance charges already paid and to either pay themselves or arrange to reimburse the mortgagee for all such costs in the future).

In light of our conclusions in *Rowe,* we have little doubt that the real estate taxes paid by FNMA on the Debtors' behalf can be passed through to them. Water and sewer charges, which were at issue in *Rowe,* are not at issue here. Insurance payments were not in issue in *Rowe. See* 110 B.R. at 715. It seems plain that it was primarily the Debtor's interests that were protected in the purchase of the hazard insurance and the FHA ins. Therefore, the costs of these items should be passed along to the Debtors as well.

FNMA's payment of obligations of the Debtors would also appear to be subject to reimbursement under the doctrine of "unjust enrichment." This doctrine is thusly described in *Wolf v. Wolf,* 356 Pa.Super. 365, 374, 514 A.2d 901, 905–06 (1986):

> Essential elements of "unjust enrichment" are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment for value.

*See also, e.g., Iron City Tool–Works v. Long,* 4 Sadler 57, 7A. 82, 83–84 (Pa.1886); *Torchia v. Torchia,* 346 Pa.Super. 229, 233, 499 A.2d 581, 582–83 (1985); *Gee v. Eberle,* 279 Pa.Super. 101, 112–13, 420 A.2d 1050, 1059–60 (1980); and *National Maritime Union of America v. Paschaledes,* 192 Pa. Super. 362, 366–67, 161 A.2d 646, 648–49 (1960).

Clearly, FNMA's payments of the Costs conferred benefits upon the Debtors. The Debtors, while not requesting FNMA to make these payments, did not in any way protest or offer to make the payments themselves. Rather, they willingly accepted the benefits of elimination of liability for these payments. Especially considering the gaps in payments effected by the period of over five years consumed by the Debtors' "Chapter 20 filing" and their delays in prosecuting this case, we find that it would be grossly inequitable for the Debtors not to be compelled to reimburse FNMA for its payments of these Costs.

The facts here are particularly analogous to those of *Iron City, supra,* in which a co-owner of a lot who erroneously paid the taxes for the entire lot was held entitled to reimbursement for the share of taxes of the other co-owner, 7A. at 83–84; and *National Maritime Union, supra,* in which a landlord was held liable to reimburse a tenant who mistakenly paid the landlord's electric bill. 192 Pa.Super. at 366–67, 161 A.2d at 648–49.

We therefore conclude that, under the doctrine of "unjust enrichment," FNMA is entitled to assert a right to reimbursement of all of the elements of the Costs in its proof of claim filed in this bankruptcy case.

## E. CONCLUSION

In addition to sustaining FNMA's right to assert a secured proof of claim for the sum of the uncontested portion of the claim ($5,803.08) and the contested portion thereof ($4,152.62), or a total of $9,955.70, we will enter an order requiring prompt further administration of this long-pending case. Recognizing that this decision may require the Debtors to prepare an amended plan, if same is feasible, we will give them until September 12, 1990, to do so, and schedule a final confirmation hearing on September 25, 1990.