**In re Arthur B. DILTS, M. Joan Dilts d/b/a Dilts Electric Company, Debtor.**

**Bankruptcy No. 87–2336PGH.**
**Adv. No. 87–432.**

United States Bankruptcy Court,
W.D. Pennsylvania.

May 31, 1989.

**760**

Gary W. Short, Pittsburgh, Pa., for debtors.

Howard K. Hilner, Pittsburgh, Pa., for Mellon Bank.

William Weiler, Pittsburgh, Pa., for IRS.

Allen L. Palmer, New Castle, Pa., for Designore Elec. Supply Co.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Issue

The question presented is whether the debtors may, under 11 U.S.C. §§ 1123 and 1129(b), modify a first mortgage lien on the debtors' residence[1] in a Chapter 11 plan, when a junior second mortgage on the same property is treated as a separate class and remains unimpaired under the plan.

### Facts

The debtors, Arthur B. Dilts and M. Joan Dilts, filed a plan of reorganization on February 8, 1988. The proposed plan contemplates that the debtors retain their residence which serves as collateral for loan obligations to Mellon Bank ("Mellon") and Zelie Consumer Discount Company ("Zelie"). In Article II of the plan, the debtors classified Mellon's claim as a Class 5 secured claim, secured by a first mortgage against the debtors' residence to the extent that such claim was an allowed, unavoidable, secured claim under the Bankruptcy Code. By contrast, the debtors classified the claim of Zelie as a Class 1 secured claim, which was secured by a second mortgage against the debtors' residence. Under Article III of the plan, Zelie's Class 1 claim is unimpaired and shall be paid in accordance with the contract upon which its claim is based. However, under Article IV of the plan, the debtors propose to impair Mellon's Class 5 secured claim by reducing the interest rate from 14% to 10½% and extending its repayment period. Thus, the debtors' plan would leave unimpaired a junior secured claim on their residence while it would impair the first mortgage lien.

Mellon objected to the confirmation of the plan or any plan that the debtors would propose wherein the interest rate or the term of its loan would be in any way impaired. Mellon claims that the plan is not fair and equitable and discriminates unfairly against Mellon. Mellon also states that, since both Mellon and Zelie have liens on the debtors' residence, both should be in the same class.

In response, the debtors correctly point out that 11 U.S.C. § 1123(a) expressly provides that liens may be modified in maturity dates and/or interest rates may be changed. The debtors also assert that the plan can be confirmed under § 1129(b) of the Code, because the plan satisfies the fair and equitable standard contained in § 1129(b)(2)(A) and does not discriminate unfairly. The debtors argue that the fair and equitable test has only two requirements. The first is that the secured credi-

---

1. The real estate in question will, for convenience, be referred to as the debtors' residence, but it also serves as the business office. Whether that real estate must be, and whether it in fact is, necessary to the reorganization, are questions we need not address at this time.

tor retain the lien which secures its claim. Because the plan proposes that Mellon retain its first mortgage position against the residence, the first requirement of the test is satisfied. The second requirement, as stated by the debtors, is that the secured creditor receive, on account of its claim, deferred cash payments totalling at least the allowed amount of its claim as of the effective date of the plan. This is contained in § 1129(b)(2)(A)(i). Because the debtors' plan proposes to pay Mellon the market interest rate (10½%) during the repayment period to insure that it is receiving the present value of its claim, the debtors argue that the plan satisfies the second requirement also. Thus, the debtors argue that the plan can be confirmed, notwithstanding Mellon's objection, because it satisfies the fair and equitable standard contained in subsection (b)(2)(A)(i) of § 1129.

*Discussion*

■ We find Mellon's argument that its claims should be in the same class as that of Zelie's to be without merit. Classification of secured claims under 11 U.S.C. § 1122 are ordinarily determined on the basis of priority, nature of collateral and agreements among creditors with respect to subordination. 5 *Collier on Bankr.* ¶ 1122.03[6] (15th ed. 1988). Two creditors with liens of different priority on the same property will usually be classified separately. *Id.*

■ However, we do find merit in Mellon's objections that the plan is unfairly discriminatory and is not fair and equitable and therefore violates § 1129(b)(1). We find no support in the Code for the proposition that debtors may impair an oversecured creditor, over its objections, by reducing the interest rate and extending the term of the repayment period while a junior mortgageholder on the same property is to receive payment in full over an extended period at a higher interest rate than that proposed to the first mortgageholder.

On the contrary, §§ 363, 361 and 506 protect an oversecured creditor's interest from modification and impairment in a Chapter 11 plan when the value of the collateral exceeds the claim.

Under the authority of § 363, the debtor's Chapter 11 plan may provide for the use, sale, or lease of property of the estate. 11 U.S.C. § 363(l). Subsection (e) provides:

Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property ... or proposed to be used, sold or leased, by the trustee [or debtor-in-possession, *see* § 1107], the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e) (1988). The purpose of this subsection, as stated in the legislative history, is to allow the court to protect any interest in property under the administration of the debtor. S.Rep. No. 98–65, 98th Cong., 1st Sess. 77 (1983) (Senate Report accompanying S. 445, Omnibus Bankruptcy Improvements Act of 1983, which was a forerunner to the Bankr. Amend. Act of 1984).

Adequate protection is addressed in § 361 which states:

When adequate protection is required under section 362, 363 or 364 of this title of an interest of an entity in property, such adequate protection may be provided by —(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the *use, sale, or lease under section 363 of this title* ... results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such ... use, sale [or] lease ... results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief ... as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361 (1988). The legislative history to this section states that: "Adequate protection of an interest of an entity in property is intended to protect a creditor's

*allowed secured claim."* 124 Cong.Rec.H. 11092 (daily ed. Sept. 28, 1978); S. 17408–09 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini) (emphasis added). If the secured creditor elected application of § 1111(b)(2), then that creditor is entitled to adequate protection of his interest to the extent of the value of the collateral, not to the extent of the creditor's "allowed secured claim." *Id.*

Determination of an "allowed secured claim," in turn, is governed by § 506 which provides:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... Such value shall be determined in light of the purpose of such valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or *on a plan* affecting such creditor's interest.
>
> (b) To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(a) and (b) (1988). (emphasis added) The Supreme Court, in *U.S. v. Ron Pair Enterprises, Inc.,* —— U.S. ——, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), upheld the government's objection to a chapter 11 plan which did not provide for postpetition interest on the government's oversecured claim, stating that:

> The natural reading of the phrase in § 506(b) ... entitles the holder of an oversecured claim to postpetition interest ... Recovery of postpetition interest is unqualified.

109 S.Ct. at 1027. The Supreme Court also held, in *United Savings Ass'n. of Texas v. Timbers of Inwood Forest Associates,* 484 U.S. 365, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988), that the phrase "value of such creditor's interest" in § 506(a) meant "the value

of the collateral," and that the phrase "value of such entity's interest" in the adequate protection provisions in § 361(1) and (2), when applied to secured creditors, meant the same.

▪ Thus, where the property securing the claim has a value which exceeds the amount of the secured claim, § 506 provides that the claim includes interest as provided for in the agreement that has accrued or is to accrue after the filing of the petition, but only to the extent that such interest, when added to the principal amount of the claim, does not exceed the value of the collateral. *See id.* 108 S.Ct. at 630–31.

▪ Similarly, 11 U.S.C. § 1129(b)(2)(A)(i)(II) provides that:

> (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
>
> (A) With respect to a class of secured claims, the plan provides—
>
> \*     \*     \*     \*     \*     \*
>
> (i) (II.) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the *allowed amount of such claim,* of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property.

11 U.S.C. § 1129(b)(2)(A)(i)(II) (1988) (emphasis added). Thus, reading this section together with §§ 363, 361 and 506, a plan cannot impair a secured claim to the extent that it is an oversecured claim. The oversecured creditor is entitled to require the plan to provide adequate protection of its interest. Consequently, the debtors cannot impair and cram down the plan on an oversecured creditor notwithstanding the permissible provisions for implementing the plan contained in 11 U.S.C. § 1123.

We therefore hold that the plan is not fair and equitable.

Debtors must also satisfy the provisions of § 1129(b)(1) which provide that the plan "does not discriminate unfairly." *Collier* states that discrimination, reduced to its

bare essentials, means that a dissident class must not only receive fair and equitable treatment, but the class must also receive treatment which allocates value to the class in a manner consistent with the treatment afforded to other classes with similar legal claims against the debtor. *Id.* Based on this standard, we find that the debtors' plan is unfairly discriminatory with respect to Mellon's claim.

For the foregoing reasons, confirmation of the debtor's plan and the debtor's Request for a "Cram Down" of Mellon Bank's Secured Claim will be refused.