In re Dariling COBB, Debtor.

Dariling COBB, Plaintiff,

v.

MORTGAGE DEFAULT SERVICES
and Edward Sparkman, Trustee,
Defendants.

Bankruptcy No. 89–13828S.
Adv. No. 90–0776S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 11, 1990.

Roger V. Ashodian, Delaware County Legal Assistance, Chester, Pa., for debtor.

Gary McCafferty, Philadelphia, Pa., for defendant Mortg. Default Services.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

## ADJUDICATION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. FINDINGS OF FACT

1. The Debtor, DARILING COBB ("the Debtor"), filed the instant underlying Chapter 13 bankruptcy case on October 18, 1989.

2. Although the Debtor filed a matrix with the court at the time that she filed her petition, she made no further filings of any papers, including her Chapter 13 Statement and Plan, through May 4, 1990. At that time EDWARD SPARKMAN, ESQUIRE, the Standing Chapter 13 Trustee ("the Trustee"), filed a motion to dismiss this case because of the Debtor's failure to file the Statement and Plan on or before November 2, 1989, as required by Bankruptcy Rules ("B.Rules") 1007(c) and 3015, respectively. A hearing was scheduled on the Trustee's motion on June 5, 1990.

3. On May 21, 1990, the Debtor finally filed her Chapter 13 Statement and Plan. The Trustee then proceeded to file a praecipe to withdraw his motion on June 5, 1990. Unfortunately, the Trustee failed to bring the filing of the praecipe to withdraw his motion to the attention of the court and, on June 5, 1990, being unaware that the Debtor filed her Statement and Plan, we entered an Order dismissing the case.

4. On July 17, 1990, we granted the Debtor's motion to reconsider our dismissal Order, finding that the Order of June 5, 1990, was entered due to an error in communications.

5. The Debtor's Plan provided that the Debtor would remit $150 for 12 months and $335.88 for the following 48 months to the Trustee, extending payments to a period of "not longer than 5 years from the date of confirmation of the Plan." It is not clear when the Debtor actually commenced payments under this Plan, although it is required that payments commence within 30 days after a Plan is filed. *See* 11 U.S.C. § 1326(a)(1). It appears that this Plan contemplated the Debtor's payment of the entire allowed secured claim of the Mortgagee through its terms.

6. On July 20, 1990, MORTGAGE DEFAULT SERVICES ("the Mortgagee") filed a secured Proof of Claim, itemized as follows:

PAYOFF AMOUNT:

| | |
|---|---|
| Foreclosure Judgment on 7/26/89 | $55,575.30 |
| Interest at 6% from 7/26/89 to 10/18/89 | 767.76 |
| Foreclosure Costs | 1,070.70 |
| TOTAL: | $57,413.76 |

7. On October 9, 1990, the Debtor filed one of the matters presently before us, the above-entitled adversary proceeding, naming the Mortgagee and the Trustee as defendants. The proceeding sought to fix the amount of the secured portion of the Mortgagee's Proof of Claim at $15,200. This figure was based upon reducing the Mortgagee's allowed secured claim, pursuant to 11 U.S.C. §§ 506(a), (d), to the alleged fair market value of the Debtor's home at 2711 Bethel Road, Chester, Pennsylvania 19013 ("the Premises") ($18,000), and deducting therefrom the alleged costs of a potential foreclosure ($1,800) and a $1,000 claim for a recoupment based upon the Mortgagee's alleged violations of the federal Truth–In–Lending Act, 15 U.S.C. § 1601, *et seq.* ("the TILA"), in the writing of the mortgage.

8. On October 15, 1990, the Mortgagee filed the other matter before us, a motion pursuant to 11 U.S.C. § 362(d) seeking relief from the automatic stay in order to proceed to foreclose upon its mortgage on the Premises.

9. The matters were consolidated for trial on a must-be-tried basis on December 4, 1990, by Order of November 21, 1990, at which time we emphasized our displeasure with the long pendency of this case and our unwillingness to continue these matters again under any circumstances.

10. The Mortgagee called Robert Ludwig ("Ludwig"), a real estate appraiser, as an expert witness. Noting that Ludwig has appeared as a witness for debtors in this court, the Debtor stipulated to his expertise. Ludwig testified that he appraised the Premises in connection with a written appraisal, admitted into evidence, valuing it at $20,000 as of November 14, 1990, principally by comparing the Premises to three other properties recently sold in its neighborhood.

11. The other comparables used by Ludwig were located in the same "Highland Gardens" area of Chester, Pennsylvania, as the Premises. Ludwig testified that all of the homes in this development were the same size and layout, although he noted that there were great differences in maintenance of these homes, since they were built over 40 years ago and their desirability had been considerably compromised by the bisection of the development by Route I–95. Considering several defects in the Premises showed to him by the Debtor, Ludwig determined that the condition of the Premises merited a lower valuation than either of the three comparables, recently sold for $26,000; $25,900; and $20,900, respectively.

12. The Debtor, the only other witness at the trial, valued the Premises at $16,000, despite the allegation of the value of the

Premises of $18,000 in the Complaint. However, the Debtor did not appear to have any degree of sophistication in valuation of properties. Her principal disputes with Ludwig's results appeared to be as follows: (a) Ludwig had allegedly told her that the value of the Premises was "not even less" than $13,000 or $14,000;[1] (b) He had failed to account for the fact that her heater was malfunctioning. She stated that "it runs by a clothespin" placed in the motor and that the electric and gas company (one company supplies both utilities in Chester) reportedly told her it was dangerous and should be replaced.

13. Ludwig denied discussing any valuation figures with the Debtor. He stated that the heater was working when he was there, and that he had not inspected it, because the Debtor had not identified the heater as a problem. Indeed, the Debtor never testified that she told Ludwig about the malfunctioning of the heater.

14. We conclude that Ludwig's valuation is far more reliable than that of the Debtor. We disbelieve the Debtor's claim that Ludwig recited a lower figure than $20,000 to her, since Ludwig credibly testified that he never gives preliminary estimates to owners of properties which he values and because the Debtor's recitation of his purported statements was incomprehensible.

15. However, we do credit the Debtor's testimony that the heater in the Premises is seriously defective and, since Ludwig did not take this defect into account, we will reduce Ludwig's figure and conclude that, as of the date of confirmation, the Debtor's home will be worth $19,000.

16. The Debtor, when questioned by her counsel, indicated no knowledge of whether she received a TILA disclosure statement or what the contents of such a document might be. However, she also stated that she had retained all of the papers from her purchase of the Premises, but had never been asked to produce them. Therefore, she had not brought any such papers, which possibly included the TILA disclosure statement, to the hearing.

17. The Debtor's counsel requested that the record be kept open to allow the Debtor to produce her TILA disclosure statement, contending that he had expected that the Mortgagee's counsel would produce it and alleging that it was unreasonably burdensome to seek same through discovery. Since the reasons for this request were totally unconvincing and indicative only of a gross lack of preparation for a matter scheduled on a must-be-tried basis, this request was denied.

18. If the Debtor were to pay off the entire secured portion of the claim of the Mortgagee, assuming a market value of the Premises of $19,000.00, she would be obliged to fund a 60–month plan in a total amount of at least $25,000. ($19,000.00 plus $3,952.00 interest at ten (10%) percent equals $22,952.00 plus ten (10%) Trustee's commissions of $2,295.20 equals $25,247.20). We assume that the Debtor has already paid the Trustee about $1,000.00. She would, therefore, be compelled to pay about $24,000 over the remaining 46 months of the Plan to liquidate the mortgage balance in her Plan, which would require her to make monthly payments in excess of $500 per month.

19. There is some possibility that the Debtor could make the minimal monthly payments of $500 necessary to fund a feasible plan. We will, however, require that she pay no less than $500 monthly in future payments, beginning in January, 1991. If such payments are made, then and only then does it appear that she would be able to adequately protect the Mortgagee's interests.

B. CONCLUSIONS OF LAW

1. The Debtor is entitled to bifurcate the Mortgagee's claim into a secured claim to the extent of the value of its interest in the interest of the Debtor's estate in the Premises, and an unsecured

---

1. Despite probing, the Debtor was unable to further explain the meaning she attributed to the phrase "not even less."

claim as to the balance of the Mortgagee's total allowed claim, as of the date of Confirmation, pursuant to 11 U.S.C. §§ 506(a), (d). *See Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123, 128–29 (3d Cir. 1990). We reject the suggestion made by the Debtor in her Complaint that foreclosure costs should be deducted from the market value of the Premises in the instant § 506 valuation process, because the Debtor intends to retain the Premises as her residence rather than sell it. *See In re 222 Liberty Associates*, 105 B.R. 798, 802–04 (Bankr.E.D.Pa.1989). Therefore, the Debtor is entitled to a judgment in the adversary proceeding that the Mortgagee's allowed secured claim is capped at $19,-000.00, the value of the Premises, and any amount of the Mortgagee's allowed claim in excess of $19,000 must be classified as an unsecured claim.

■ 2. The Debtor's TILA claim must be dismissed. While the burden of proving compliance with the TILA is upon a lender once a debtor has produced or provided some evidence or testimony that a TILA violation has occurred, *see In re Herbert*, 86 B.R. 433, 438–39 (Bankr.E.D.Pa.1988), *aff'd sub nom. Herbert v. Federal Nat'l Mortgage Ass'n*, 102 B.R. 407 (E.D.Pa. 1989); and *In re Pinder*, 83 B.R. 905, 912–14 (Bankr.E.D.Pa.1988), here the Debtor has provided no evidence whatsoever that there has been a TILA violation in the transaction.

■ 3. We cannot make allowances for the Debtor's failure to comply with the time strictures of B.Rule 3015 in the filing of her Plan, and therefore will not set forward the maximum time in which the Debtor may make payments for this reason. The filing of a plan beyond a date 15 days from the filing of a Chapter 13 case may itself be grounds for dismissal of the case. *See In re Williams*, Bankr. No. 90–10983F, slip. op. at 4 (Bankr.E.D.Pa. Dec. 5, 1990); *In re Welling*, 102 B.R. 720, 722–23 (Bankr.S.D.Iowa 1989); and *In re Bracey*, 89 B.R. 6, 7–9 (Bankr.D.Md.1988). Despite the absence of a motion by any interested party, we could have and probably should have dismissed this case *sua sponte* when the Plan was not filed shortly after the 15–day period. *See In re Fricker*, 116 B.R. 431, 442 (Bankr.E.D.Pa.1990); and *Williams, supra*, slip op. at 5. While this court has generally refrained from effecting a dismissal when the violation was *de minimis*, *see In re Neary*, 54 B.R. 94 (Bankr.E.D.Pa.1985), and attendant circumstances militated against such action, *Williams, supra*, slip op. at 4–5, the circumstances here indicate a gross violation of B.Rule 3015, and no compelling extenuating circumstances were related.

The Debtor is therefore fortunate that we did not and will not now exercise our power to dismiss her case *sua sponte*. However, we cannot extend her plan-period and reward her further simply because these past transgressions were not punished with the full extent of the penalties available to us. We therefore conclude that the Debtor was effectively deprived, by counsel's delay in filing her Plan, of several months of her 60–month plan period. We therefore observe that she has only 46 months left in her plan period, through October, 1994, in which to make plan payments.[2]

■ Counsel's apparent justifications for the delay of *over seven months* in failing to file the Debtor's Plan and/or his reasons why we should extend the payment-period beyond October, 1994, appear to be as follows: (1) It may be permissible to extend post-confirmation plan modifications to a period five years after confirmation. *See* 11 U.S.C. § 1329(c); and *West v. Costen*, 826 F.2d 1376, 1378–79 (4th Cir. 1987). However, the instant case does not involve a plan modification, within the scope of § 1329. Therefore, 11 U.S.C. § 1322(c) applies and the five-year period recited in that Code section should run from the date that payments are to begin

---

**2.** In fact, the use of a five-year payment period, as opposed to the normal *three-year* limit, is permissible only for cause. We note that the Debtor has ignored our holding, in *In re Capo-* *danno*, 94 B.R. 62, 66 (Bankr.E.D.Pa.1988), that a separate Application should be filed to extend a plan term over the normal three-year term.

by considering the cumulative effect of B.Rule 3015 and 11 U.S.C. § 1326(a)(1), *i.e.*, 45 days after the filing of the case. If we were to accept the Plan's recitation that the five-year period begins from confirmation, we would be allowing counsel's delays in achieving confirmation to manipulate the mandatory time-periods set forth in § 1322(c). *See In re Woodall,* 81 B.R. 17 (Bankr.W.D.Ark.1987); and 5 COLLIER ON BANKRUPTCY, ¶ 1322.15, at 1322–35 to 1322–37 (15th ed. 1990); (2) This court allowed counsel to so proceed in other cases; and (3) Counsel's great workload often prevents him from preparing plans within the timeframe of B.Rule 3015. These latter two arguments can be very quickly rejected. Estoppel does not run against the court; a dispensation in one case cannot guarantee the same dispensation in later cases into perpetuity. Counsel's good fortune in other matters is therefore in no sense "precedent" for future violations of the same or other rules in other cases. Also, the court clearly cannot re-write the procedural rules because certain practitioners are very busy. We note, however, that often the busiest practitioners are the most punctilious. We must emphasize, in light of counsel's apparent claim of an expectation of continuous dispensations in this area, that such conduct will not be tolerated here or in the future.

■ 4. In addition, we do not believe that we can allow the Debtor's rights under § 506 of the Code impact upon the payment obligations which must be satisfied if she is to propose a confirmable plan. The Code, at 11 U.S.C. § 1322(b)(5), requires "maintenance of payments while the case is pending as to any unsecured or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ..." This requires a debtor having a long-term obligation which will remain unliquidated after the plan is completed, such as a mortgage, to make at least regular mortgage payments, beginning no greater than 45 days after the filing of a Chapter 13 case.

The Debtor has therefore already fallen behind in the minimum requirements for maintaining her mortgage payments. We further observe that we doubt that she can reduce the amount of her mortgage payments or the interest rate of her mortgage loan simply because she is able to reduce the amount of the mortgagee's secured claim through the medium of § 506. *See In re Hyden,* 112 B.R. 431 (Bankr.W.D. Okla.1990); *In re Hayes,* 111 B.R. 924 (Bankr.D.Ore.1990); and *In re Diquinzio,* 110 B.R. 628 (Bankr.D.R.I.1990). *Cf. In re Dilts,* 100 B.R. 759 (Bankr.W.D.Pa.1989) (Chapter 11 case); and *In re Kehm,* 90 B.R. 117, 125 (Bankr.E.D.Pa.1988).[3]

■ Therefore, it appears that the Debtor could only propose a feasible plan and thereby adequately protect the Mortgagee's interests by immediately commencing payments in an amount of at least $500/month. *See* Finding of Fact 18, page 25, *supra.*

5. Although we have some doubt on this point because a greater performance will be required of the Debtor than she has proposed under her Plan thus far, we will give the Debtor an opportunity to formulate and successfully perform according to a feasible plan. Assuming that the Debtor would still intend to liquidate the entire amount of the Mortgagee's allowed secured claim in her Plan, she would be obliged to pay at least $500 monthly. If she did so, the Mortgagee's interests would appear to be adequately protected, thus eliminating its cause for relief under 11 U.S.C. § 362(d)(1). Although the Debtor has no equity in the Premises, retention of the Premises as a residence for the Debtor and her family is the centerpiece of the Plan, rendering it necessary to the effective reorganization of the Debtor under 11

---

3. We note that, in another case tried the same day pursuant to which the parties were permitted to file Briefs, *In re Cole, Cole v. Cenlar Federal Bank,* Bankr. No. 90–10672S, Adv. No. 90–0748S, the Debtor's counsel has argued, contrary to this authority, that the reduction of a mortgagee's secured claim pursuant to § 506 permits a deduction from the arrearages and/or a change in the payment terms of the mortgage. In light of the language of § 1322(b)(5), we are skeptical of the accuracy of this assertion.

U.S.C. § 362(d)(2)(B), and hence causing us to refrain from granting relief under 11 U.S.C. § 362(d)(2) if these requirements are met. *See In re Mitchell,* 75 B.R. 593, 599 (Bankr.E.D.Pa.1987) (*"Mitchell I"*); and *In re Crompton,* 73 B.R. 800, 810–11 (Bankr. E.D.Pa.1987). *But cf. In re Gulph Woods Corp.,* 84 B.R. 961, 971–73 (Bankr.E.D.Pa. 1988).

■ In determining that the Debtor could possibly formulate a feasible plan, we have added the amount necessarily payable by the Debtor to liquidate the $19,000 allowed secured claim of the Mortgagee; a ten (10%) percent interest figure for deferral of payments to the Mortgagee to 11 U.S.C. § 1325(a)(5)(B), *see In re Mitchell,* 77 B.R. 524 (Bankr.E.D.Pa.1987) (*"Mitchell II"*); and a trustee's commission of ten (10%) percent of the sum of the first two figures. *See* 28 U.S.C. § 586(e)(1)(B)(i); *Mitchell I, supra,* 75 B.R. at 599; and *Crompton, supra,* 73 B.R. at 806–07, 809.

■ 6. In determining the amount of the Mortgagee's entire allowed claim, we have eliminated the component for "Interest," because the Mortgagee is undersecured. *See* 11 U.S.C. § 506(b). The Debtor has not contested the entry for "Foreclosure Costs" of $1,070.70, especially since the Mortgagee erroneously omitted an additional demand for attorneys' fees therefrom. As a result, the Mortgagee's entire claim is $56,756.00, which can be bifurcated, pursuant to § 506(a), into a secured claim of $19,000 and an unsecured claim of $37,756.00.

## C. ORDER

And now, this 11th day of December, 1990, after a consolidated hearing/trial on the Motion of MORTGAGEE DEFAULT SERVICES ("the Mortgagee") for relief from Automatic Stay in the main case of DARILING COBB, the Debtor ("the Debtor), and on the merits in the above-captioned adversary proceeding in which the Debtor is the plaintiff, it is hereby ORDERED and DECREED as follows:

1. Judgment is entered in part in favor of the Debtor and against the Mortgagee in the adversary proceeding.

2. Pursuant to 11 U.S.C. §§ 506(a), (d), the extent of the value of the Mortgagee's interest in the Debtor's interest in the Premises is determined to be $19,000.

3. The Mortgagee is allowed a secured claim of $19,000 and an unsecured claim of $37,756.00 in the Debtor's main bankruptcy case.

4. The continuation of the automatic stay of proceedings to foreclose upon the Premises as to the Mortgagee in the Debtor's main bankruptcy case is conditioned upon the following:

   a. The Debtor's remittance of payments of not less than $500.00 to the Trustee beginning on or before January 15, 1991, and the first business day after the 15th of each successive month, pending confirmation of a feasible Plan of Reorganization which provides for different payment terms.

   b. The Debtor's obtaining confirmation of a Plan of Reorganization on the rescheduled date of confirmation.

5. If the Debtor fails to comply with either of the terms of paragraph 4 *supra,* the Mortgagee may provide notice of same to the Debtor and his counsel. If the default is not cured within ten (10) days after the dispatch of this notice, the Mortgagee may certify same to the court and the court may enter an order allowing it to proceed to foreclose upon the Premises.

6. A re-scheduled hearing on Confirmation of the Plan and the Trustee's current Motion to Dismiss this case shall be conducted on

Thursday, January 17, 1991, at 9:30 A.M. and shall be held in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

7. Any Amended Plan proposed by the Debtor in light of this Adjudication (such as resorting to merely curing mortgage arrearages) shall be filed and served upon the Mortgagee's counsel, the Trustee, and the court in chambers on or before December 31, 1990.

8. In light of the long pendency of this case, no continuances of the dates set forth in this Order will be entertained. If the Debtor cannot or does not meet the requirements placed upon her, this case will be dismissed.