**In re Mae RORIE, Debtor.**

**Bankruptcy No. 88–11097F.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 10, 1989.

---

Steve P. Hershey, Community Legal Services, Inc., Philadelphia, Pa., for debtor, Mae Rorie.

Gary McCafferty, Philadelphia, Pa., for Federal Nat. Mortg. Ass'n.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

The two matters currently before me are related and will be resolved by a joint record. They are: whether the Federal National Mortgage Association (FNMA) is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d), and whether the debtor's objection to FNMA's proof of claim should be sustained. By order dated December 21, 1988, I preliminarily denied FNMA's request for relief. 11 U.S.C. § 362(e). In the memorandum accompanying that order, I explained that I could not determine whether the secured creditor had met its burden under subsection 362(d)(2) or whether the debtor had met her burden under subsection 362(d)(1) without first determining the creditor's allowed secured claim. Therefore, I shall consider first the debtor's objection to the creditor's proof of claim and then determine whether the automatic stay should be lifted.

### I.

As I noted in my earlier resolution of the preliminary request for relief from the stay, the real property located at 5311 Chester Avenue, Philadelphia, Pa. was pur-

chased in April, 1975 by Samuel Moore. The mortgage agreement between Mr. Moore and FNMA (Ex. M–8) was in the amount of $10,000.00, payable over a 15 year period at an interest rate of 8%. For reasons which were not explained, Mr. Moore never resided at this address. Instead, the debtor lived there, paid the taxes and utilities, and sent mortgage payments directly to FNMA.

I also noted previously that the debtor stopped sending mortgage payments, in violation of the mortgage agreement. As a result, FNMA commenced foreclosure proceedings by complaint on January 10, 1984. This complaint, Ex. M–1, requested damages in the amount of $7,202.18 based upon:

| | |
|---|---|
| Principal Balance | $6,016.83 |
| Interest from 6/1/83 to 1/15/84 at 8% | 302.28 |
| Attorney's fee | 400.00 |
| Late charges | 87.85 |
| Escrow deficit | 395.22[1] |

After years of litigation, judgment was entered in favor of FNMA on November 4, 1987 in the amount of "$7,202.18 with interest and costs." Ex. M–5.

A foreclosure sale was ultimately scheduled for April 4, 1988. On March 31, 1988, Mr. Moore transferred the realty to the debtor by special warranty deed. On April 1, 1988, the debtor filed a voluntary petition in bankruptcy under chapter 13, which stayed the foreclosure sale.[2]

The debtor has proposed a chapter 13 plan of reorganization which calls for monthly payments of $133.36 for 60 months; these payments, totalling $8,001.60, are to be paid to FNMA, minus the chapter 13 trustee's commission of $800.00.[3] It has been stipulated that the debtor is current in her plan payments. This dispute arises, however, because FNMA filed a proof of claim demanding payment of $16,843.64 as a secured creditor. At trial on these two contested matters, FNMA offered evidence to support its belief that its allowed secured claim should be $17,901.30.[4] It was stipulated that the fair market value of the real estate is $18,000.00 and that the mortgage is insured by the Veteran's Administration.

### II.

The respective positions of the parties may be quickly summarized. The debtor contends that the allowed secured claim of FNMA is limited to the amount of damages assessed by the state court in the foreclosure action, plus postjudgment interest at the Pennsylvania judgment interest rate of 6%. *See* 41 P.S. § 202. The creditor argues that it is entitled to receive the unpaid principal balance, plus interest at the contract rate, late charges, escrow advances, costs of suit and miscellaneous charges (as well as attorney's fees), from

---

1. The mortgage agreement called for the mortgagor to escrow monthly with the mortgagee payments for real estate taxes and insurance. In all likelihood, the escrow deficit represents payments for taxes or insurance advanced by the mortgagee. *See generally Park v. Greater Delaware Valley Sav. & Loan Assoc.*, 362 Pa.Super. 54, 523 A.2d 771 (1987).

2. In the previously mentioned unpublished memorandum, dated December 21, 1988, I discussed whether this transfer, coupled with the eve of bankruptcy foreclosure sale, resulted in a bad faith bankruptcy filing. For a number of reasons I concluded that the filing was not done in bad faith. Among those reasons was Pennsylvania law, 41 P.S. § 403(c)(6), which obligates mortgagees to inform mortgagors whether there are any mortgage restrictions on transfer of the property. If there are no such restrictions then a transfer may occur, subject to the

mortgage lien. There do not appear to have been any such restrictions in the instant agreement.

3. This commission may be higher than the maximum permitted by statute, 28 U.S.C. § 586(e)(1)(B)(i).

4. This figure was computed as follows:

| | |
|---|---|
| unpaid principal balance | $6,016.83 |
| interest to 4/30/88 | $2,331.12 |
| late charges | $ 520.79 |
| appraisal fee | $ 200.00 |
| water & sewer | $ 969.05 |
| property inspections | $ 380.00 |
| satisfaction fee | $ 20.00 |
| escrow overdraft | $7,463.51 |

Ex. M–9. The escrow overdraft figure includes attorneys fees and costs of $3,198.91. At trial, it was disclosed that attorney's fees alone are sought in the amount of $2,170.00.

the date of the last monthly payment until the date this bankruptcy case commenced.[5]

On some of the issues presented, one or the other party is clearly correct. For example, the mortgage agreement itself contains a limit on the amount of attorney's fees that may be passed on to the mortgagor. *See* Ex. M–8, ¶ 13 ("... an attorney's commission of five per centum (5%) of said principal debt shall be payable...."). Courts in this district have long held that such contractual provisions serve as a ceiling upon the attorney's fees which may be sought from the mortgagor. *See, e.g., In re Schwartz,* 68 B.R. 376, 379 n. 7 (Bankr. E.D.Pa.1986); *In re Johnson–Allen,* 67 B.R. 968, 976 (Bankr.E.D.Pa.1986); *In re Cosby,* 33 B.R. 949, 950–51 (Bankr.E.D.Pa. 1983). Thus, as the debtor asserts, FNMA is limited in its request for counsel fees to 5% of $6,016.83, or $300.84. As it has already been awarded $400.00 in its state court judgment, it is entitled to no more.[6]

The state court judgment also entitled FNMA to receive costs of suit. Such costs must include items such as the filing fee, costs of service, and the costs connected with the stayed foreclosure sale. 22 *Standard Pennsylvania Practice* 2d §§ 121.74, 121.76 (1984). The judgment amount does not include these costs specifically in its damage assessment and so they must be added to arrive at the mortgagee's allowed secured claim.[7]

The true nub of this dispute originates from the effect, if any, of the entry of judgment prepetition. The debtor argues that the judgment limits the mortgagee's proof of claim in two respects, while FNMA contends that it has no effect on its claim.

To a certain extent, the effect of the judgment depends upon the content of the debtor's chapter 13 plan. Pursuant to 11 U.S.C. § 1321, which permits only a chapter 13 debtor to propose a plan, and § 1322(b)(5), the debtor may seek to cure a prepetition mortgage default in her plan. The debtor may also choose to provide for an allowed secured claim as part of her plan. 11 U.S.C. § 1325(a)(5). These choices may only be made by the debtor, not the mortgagee, because the mortgagee may not propose any plan. *See In re Bender,* 86 B.R. 809, 812 (Bankr.E.D.Pa. 1988).

██ If the debtor proposes to cure the mortgage arrearage, she has decided to deaccelerate the mortgage default. *See Matter of Roach,* 824 F.2d 1370 (3d Cir. 1987). Upon the successful completion of her plan, her mortgage is reinstated as if there had been no prior default and the effect of the prepetition judgment is extinguished. *See In re Smith,* 92 B.R. 127, 130 (Bankr.E.D.1988); *In re Bertsch,* 17 B.R. 284 (Bankr.N.D.Ohio 1982). Any attempt to cure the prepetition mortgage arrearage requires that all missed prepetition payments be made along with late charges and other costs permitted to be assessed by the mortgage agreement; in essence, the debtor is choosing to repay the loan under the terms of the mortgage contract, including its interest rate. *Id.* However, if the debtor proposes to pay the creditor's allowed secured claim in full, the judgment does affect the amount of that claim. The entry of judgment merges the obligation on the mortgage into the judgment. *See In re Smith; In re Herbert,* 86 B.R. 433 (Bankr. E.D.Pa.1988). *See also In re Ocasio,* 97 B.R. 825, 826 n. 1 (Bankr.E.D.Pa., 1989) (Twardowski, C.J.); *In re McKillips,* 81

---

**5.** Both parties assume, I believe correctly, that FNMA may hold an allowed secured claim even though the debtor has no personal liability on the note. *See In re Lewis,* 63 B.R. 90 (Bankr.E. D.Pa.1986) (creditor may hold a secured claim although the debtor has no personal liability on the claim due to a prior chapter 7 discharge). The transfer of the realty here was subject only to the mortgage; the debtor assumed no liability on the note.

**6.** As the state court judgment is conclusive, I have no authority to reduce the fees already awarded. *See generally Matter of Ross,* 602 F.2d 604 (3d Cir.1979); *In re Cobley,* 89 B.R. 446 (Bankr.E.D.Pa.1988).

**7.** In its unpaginated memorandum at Part V, the debtor concedes that FNMA is entitled to add its costs to the judgment amount. Such a concession contradicts somewhat her position regarding prejudgment interest.

B.R. 454 (Bankr.N.D.Ill.1987) (discussing Illinois law).

■ Unless the mortgage agreement provides otherwise, postjudgment interest accrues at the "lawful" rate, 42 Pa.C.S.A. § 8101, which is defined by 41 P.S. § 202 as 6% in Pennsylvania when the contract is silent. *See Ball v. Rolling Hill Hospital,* 359 Pa.Super. 286, 518 A.2d 1238, 1245–46 (1986); *In re Smith; In re Herbert.* As the debtor here has proposed to pay the entire allowed secured claim of FNMA, and as the mortgage instrument does not provide for the contract rate to continue after judgment, I agree with the debtor that prepetition interest runs here at the rate of 6% from the entry of judgment until the commencement of this chapter 13 case. *In re Herbert.*[8]

The more difficult question is whether contract interest continued to accrue after the foreclosure suit was initiated up to the time judgment was entered, and whether it may be assessed as part of FNMA's secured claim. The debtor argues that the entry of judgment in foreclosure assessed damages, *Landau v. Western Pennsylvania Nat'l Bank,* 445 Pa. 217, 282 A.2d 335 (1971), and this damage assessment is binding as a final judgment upon this court. FNMA contends that damages may be reassessed in foreclosure, after judgment, pursuant to a state court's general power to amend its judgments. *Chase Home Mortgage Corporation v. Good,* 370 Pa.Super. 570, 537 A.2d 22 (1988). *See also Stephenson v. Butts,* 187 Pa.Super. 55, 142 A.2d 319 (1958). Thus, FNMA argues that prejudgment interest is a proper element of its secured claim.

---

**8.** As I also conclude that FNMA is oversecured, it is entitled to postpetition interest from the commencement of the case until the time of confirmation. 11 U.S.C. § 506(b). *In re Hildreth,* 43 B.R. 721, 722 (Bankr.D.Idaho 1984); 3 *Collier on Bankruptcy* ¶ 506.05, at 506–42 (15th ed. 1988). This postpetition interest also accrues at the judgment rate as the mortgage has been merged with the judgment. *See generally United States v. Ron Pair Enterprises, Inc.,* —— U.S. ——, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Since the issue of confirmation is not now before me, I need not address the appropriate rate of interest postconfirmation pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii).

## III.

■ The issue of prejudgment interest in Pennsylvania has been the subject of much discussion. Generally, Pennsylvania follows the common law as articulated in the Restatement (Second) of Contracts at § 354[9]. In an action on a contract (such as a mortgage), prejudgment interest "is awardable as of right ... where the damages are liquidated and certain, and the interest is readily ascertainable through computation." *Daset Mining Corp. v. Industrial Fuels Corp.,* 326 Pa.Super. 14, 473 A.2d 584, 595 (1984). *Accord, e.g., Peterson v. Crown Financial Corp.,* 661 F.2d 287, 293 (3d Cir.1981); *Gold & Co. v. Northeast Theater Corp.,* 281 Pa.Super. 69, 421 A.2d 1151 (1980). *See* Comment, *Prejudgment Interest and Delay Damage Awards on Breach of Contract and Related Damages: A Comparative Analysis of New York, Ohio and Pennsylvania Law,* 23 Duq.L.Rev. 1097 (1985). Interest runs from date of demand, *see Verner v. Shaffer,* 347 Pa.Super. 206, 500 A.2d 479 (1985), and accrues at the legal rate of interest unless the contract specifies otherwise. *See Daset Mining Corp. v. Industrial Fuels Corp.; O'Brien & Gere Engineers, Inc. v. Taleghani,* 525 F.Supp. 750, 762 (E.D.Pa. 1981). Even if the plaintiff fails to request prejudgment interest, it may be awarded, as such interest is a matter of right and not of discretion. *See Gold & Co. v. Northeast Theater Corp.; Verner v. Shaffer.*

In the instant dispute, FNMA clearly requested prejudgment interest in its complaint in foreclosure, Ex. M–1, and an

---

**9.** The language of current § 354 was formerly located at § 337 (1932). *See Pennys v. Pennsylvania R. Co.,* 408 Pa. 276, 183 A.2d 544 (1962). Section 354 states as follows:

§ 354. Interest as Damages.

(1) If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance in the amount due less all deductions to which the party in breach is entitled.

award of interest was specified in the entry of judgment. Ex. M–5. Such an award was proper under state law and the debtor does not suggest otherwise. Rather, the debtor emphasizes that damages for prejudgment interest were not liquidated in amount. Therefore, the debtor is arguing that the failure of the state court to liquidate the amount of prejudgment interest represents a waiver by FNMA of that component of damages. The debtor may also be arguing that the filing of a bankruptcy petition constitutes an event which bars the allowance of prepetition interest not already awarded. I shall discuss these two arguments in turn.

■ The extent and validity of a secured claim in a bankruptcy case is generally defined by non-bankruptcy law, typically state law. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Under Pennsylvania law, the right to claim interest as a component of damages may be lost. However, it is not lost by the entry of judgment alone. Those few state court decisions which have concluded that the plaintiff waived its right to interest involved either the payment of the entire assessed judgment amount by defendant, thus precluding the court from altering its judgment and reassessing damages, *Chase Home Mortgage Corp. v. Good,* or the revival of the judgment for a sum certain which did not include prior interest. *Kistler v. Mosser,* 140 Pa. 367, 21 A. 357 (1891).

These decisions should be contrasted with *Robinson v. Home Life Ins. Co.,* 322 Pa. 284, 185 A. 748 (1936). In *Robinson,* the mortgagee took possession of the realty, collected rents for some months, then confessed judgment and purchased the property at foreclosure sale. A dispute arose as to the ownership of the rents collected. Although the lower court judgment was modified in some respects, the Pennsylvania Supreme Court affirmed the holding that the mortgagee was entitled to retain a portion of the rents equal to the interest which accrued on the loan balance between the date it took possession and the date that judgment was confessed, even though the damages assessed did not include such interest.[10]

Therefore, until the debtor filed her bankruptcy petition, triggering the automatic stay, FNMA had the right under state law to seek to have its judgment amount reassessed and its interest award liquidated. *Id.; Chase Home Mortgage Corp. v. Good.*[11] As the mortgage provided that the rate of interest after default should be the contract rate of 8%, rather than the legal rate of 6%, the judgment could have been amended to reflect prejudgment interest at this higher rate, even after the entry of judgment.

To the extent the debtor suggests that the commencement of this bankruptcy case is an event which precludes reassessment of damages, I respectfully disagree. While I in no way challenge the debtor's assertion that a state court judgment is binding upon this court, *see generally* Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy,* 58 Am.Bankr.L.J. 349 (1984), an allowance of prejudgment, prepetition interest would not run afoul of or overturn the foreclosure judgment. Rather, it would liquidate what in essence is an unliquidated claim for purposes of administering this bankruptcy case. Bankruptcy courts often perform this function when resolving contested matters. *See, e.g., Matter of Brints Cotton Marketing, Inc.,* 737 F.2d 1338 (5th Cir.1984); *Bittner v. Borne Chemical Co.,* 691 F.2d 134 (3d Cir.1982). *See also* 11 U.S.C. § 502(c); H.Rep. 95–595, 95th Cong. 1st Sess. 352, 354 (1977). U.S.

---

**10.** The Court described the interest amount in this fashion:

> Interest on mortgage due to the defendant [mortgagee] for six months not claimed in the assessment of damages in the foreclosure proceedings and therefore appropriated by the defendant.

*Robinson v. Home Life Ins. Co.,* 322 Pa. at 287, 185 A. 748.

**11.** I assume that the power to modify a state court judgment is an equitable remedy subject to defenses such as laches. Here, the only evidence to explain FNMA's delay in requesting such modification is that the debtor has filed an appeal from the entry of judgment in foreclosure, and the creditor was awaiting the outcome of the appeal. Therefore, there is no evidence of laches here.

Code Cong. & Admin.News 1978 pp. 5787, 5963, 6307, 6309.

In sum, the debtor's objection to FNMA's proof of claim will be sustained in part only. I conclude that FNMA has an allowed secured claim of $12,693.00, based on the following calculation: judgment amount of $7,202.18; postjudgment interest at the rate of 6% per year from November 4, 1987 (date of entry of judgment) to April 1, 1988 (date bankruptcy case commenced) equalling $180.00; cost of suit, $1,028.91;[12] prejudgment interest from January 15, 1984 (date of last interest assessment, Ex. M–1, ¶ 7) to November 4, 1987 (date of judgment) at 8% interest rate, equalling $1,825.11; water and sewer charges incurred of $969.05;[13] post-judgment escrow payments incurred totalling $967.46;[14] and late charges of $520.79.[15] There is no provision in the mortgage agreement which obligates the debtor to pay for an appraisal fee or property inspections and so such charges are disallowed as part of the creditor's secured claim. Moreover, the request for a $20.00 mortgage satisfaction fee is premature. Such a fee request can be made when the debtor requests that the mortgage be satisfied. *See* 42 Pa.C.S.A. § 8104(a).

### IV.

▆ Having determined the secured creditor's allowed secured claim, I must now decide whether this creditor is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d). As the parties agree that the fair market value of the debtor's residence is $18,000.00, and as the allowed

secured claim of FNMA is $12,693.50, there is equity in the property which precludes relief under subsection 362(d)(2)(A). *See, e.g., In re Dunes Casino Hotel,* 69 B.R. 784, 792–93 (Bankr.D.N.J.1984).

An equity cushion has been defined as "the surplus of value remaining after the amount of indebtedness is subtracted from the fair market value of the collateral." *Pennsylvania State Employees' Retirement Fund v. Roane,* 14 B.R. 542, 545 (Bankr.E.D.Pa.1981). *See also In re 6200 Ridge, Inc.,* 69 B.R. 837, 842 (Bankr.E.D. Pa.1987). Applying this definition, FNMA's $12,693.50 secured claim is subtracted from the home's $18,000.00 fair market value, to reveal a $5,306.50 equity cushion or, expressed as a percentage of the claim, a cushion of almost 42%.[16]

▆ The existence of an equity cushion alone may, in certain circumstances, constitute adequate protection within the meaning of § 362(d)(1). *In re Mellor,* 734 F.2d 1396, 1400 (9th Cir.1984); *In re 1606 New Hampshire Ave. Assocs.,* 85 B.R. 298 (Bankr.E.D.Pa.1988); *In re Liona Corp., N.V.,* 68 B.R. 761 (Bankr.E.D.Pa.1987); *In re Grundstrom,* 14 B.R. 791, 793 (Bankr.D. Mass.1981). Among the factors to be considered are: the size of the cushion; the rate at which the cushion will be eroded; and whether periodic payments are to be made to prevent or mitigate the erosion of the cushion. *In re Liona Corp., N.V.,* 68 B.R. at 767. *See also In re Heath,* 79 B.R. 616 (Bankr.E.D.Pa.1987).

The size of the FNMA's equity cushion is relatively substantial, *see In re Morysville*

---

**12.** This is derived by subtracting the attorney's fees incurred, $2,170.00 from the stated total of fees and costs, $3,198.91. Ex. M–9; Debtor's memorandum at Part V.

**13.** Unless paid, these charges would become a first lien upon the real estate. *See* 53 P.S. §§ 7101 *et seq.; In re McLean,* 97 B.R. 789 (Bankr.E.D.Pa., 1989).

**14.** The postjudgment prepetition escrow advance was computed by subtracting the principal and interest payments set out in the original mortgage agreement from the monthly payment amount due as set out in Ex. M–9. As FNMA never requested in its complaint that damages

be entered for unpaid escrows which accrued prejudgment, and a mortgagee has no right to repayment of escrow advances prior to demand, *see Park v. Greater Delaware Valley Savings & Loan,* and no demand for the escrows was made prior to judgment, it has no right to recover those funds not provided for by the judgment. *See In re McKillips.*

**15.** Late charges in the mortgage agreement are set at 4%, which is really just contractual interest due upon default.

**16.** This figure is reached by dividing the total encumbrance, $12,693.50, into the equity of $5,306.50.

*Body Works, Inc.,* 86 B.R. 51 (Bankr.E.D. Pa.1988); *In re McKillips,* and the debtor has been submitting plan payments to the trustee.[17] Coupled with the large equity cushion is the existence of mortgage insurance in favor of FNMA. Taken together, the secured claim of FNMA is adequately protected. *Pennsylvania State Employees Retirement Fund v. Roane.*

An appropriate order shall be entered thus sustaining the debtor's objection to FNMA's proof of claim, in part, and denying FNMA's request for relief from the stay.

17. The debtor's plan will have to be amended if it is to provide for FNMA's allowed secured claim. The debtor will be afforded 30 days to submit an amended plan.