In re Joanne GALLOWAY, Debtor.

Joanne GALLOWAY, Plaintiff,

v.

LONG BEACH MORTGAGE COMPANY, Defendant.

Bankruptcy No. 97–15311DWS.
Adversary No. 97–0913.

United States Bankruptcy Court,
E.D. Pennsylvania,
Philadelphia Division.

April 14, 1998.

Elizabeth C. Goodell, Philadelphia, PA, for debtor.

Gary E. McCafferty, Philadelphia, PA, for Long Beach Mortgage Co.

Edward Sparkman, Philadelphia, PA, Chapter 13 Trustee.

Dave Adams, Philadelphia, PA, United States Trustee.

## *OPINION*

DIANE WEISS SIGMUND, Bankruptcy Judge.

At issue in this adversary proceeding is a complaint filed by Joanne Galloway (the "Debtor") against Long Beach Mortgage Company ("Long Beach") objecting to the latter's proof of claim. The Debtor's complaint contains three counts: Count I (Incorrect Cure Amount) avers that the Debtor's

arrears were improperly calculated and that the foreclosure fees and costs claimed by Long Beach are unreasonable and not recoverable under the mortgage contract and applicable bankruptcy and non-bankruptcy law; Count II (Truth–in–Lending Act) avers that Long Beach violated the Truth–In–Lending Act, 15 U.S.C. § 1638 ("TILA"), by failing to provide the Debtor with an itemization of the amount financed; and Count III (Act 6) avers that Long Beach violated the Pennsylvania Act of 1974, No. 6, P.S. § 101 et seq. ("Act 6") by providing the Debtor with a deficient notice of intent to foreclose. For the reasons explained below the Debtor's objection will be granted in part and denied in part.

## BACKGROUND

The instant bankruptcy proceeding was filed under Chapter 13 on May 1, 1997. In response to Long Beach's timely filed proof of claim stating total indebtedness in the amount of $19,044.77 and arrears in the amount of $6,389.08, the Debtor filed the present adversary proceeding on August 11. On September 30, the Court issued a pretrial order in which the parties were directed, *inter alia*, to file a joint pretrial statement by January 6, 1998. In the pretrial statement filed on January 9,[1] the Debtor requests to amend her complaint to include a claim for relief under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 et seq., on account of Long Beach's alleged failure to provide the Debtor with accurate notice of its intent to foreclose pursuant to Act 6. The Debtor represents that the need to amend the complaint is based on information uncovered during discovery after the complaint was filed, although the complaint itself alleges that the Act 6 notice was inaccurate.

On February 10, 1998, a brief trial was held on the Debtor's adversary complaint.

The Debtor was the only witness to testify. Her testimony established that on January 30, 1996, she granted Long Beach a mortgage in her house located at 5135 Charles Street, Philadelphia, Pennsylvania to secure a debt in the amount of $16,000. Exhibit P–1. At the closing of the mortgage loan, Debtor received a TILA disclosure statement summarizing a variety of information about the loan, as specified by TILA. However, it did not include an itemization of the amount financed or a statement indicating that the Debtor could obtain an itemization upon request. Exhibit P–4.

The mortgage required monthly payments in the amount of $209.87 starting on March 1 and continuing each month thereafter. The Debtor presented evidence in the form of money order receipts and account statements from Long Beach establishing that she made and Long Beach received six payments. The payments were for the months of March to August, 1996. Exhibit P–2. Several of the payments were late, but the Debtor included the late fees with the payments, and the account statement reflects that Long Beach accepted them. *Id.* Thereafter, the Debtor ceased making further payments, and Long Beach initiated collection procedures.

On November 27, Long Beach sent the Debtor a notice of intention to foreclose on the mortgage as required by Act 6 ("Act 6 Notice"). Exhibit P–3. By this date the Debtor was behind on her mortgage by three months, from September to November, which including the late fees resulted in arrears totaling $667.32. Nevertheless, the Notice stated that she failed to make six monthly payments, from June to November, and that a total of $1,309.36 was required to cure the default. *Id.*

Thirty days later, on December 27, Long Beach filed a foreclosure complaint against

---

1. The statement was not signed by Long Beach because, according to the Debtor's counsel therein, the parties were not able to agree on its contents. It is difficult to understand why a party should ever fail to sign a pre-trial statement because of a disagreement over its contents. The pre-trial statement is a document for the parties to set out their positions, including where they agree and disagree. As long as each party permits the other to state the full scope of their disagreement there should never be a reason for a party to fail to sign the document. In this case for instance, Long Beach should have specified all of the points over which it disagreed with the Debtor, and signed the document. Similarly, the Debtor should have permitted Long Beach to include any statement it wanted in the pretrial statement, specifying if need be the Debtor's own disagreements with Long Beach's positions.

the Debtor in the Court of Common Pleas in Philadelphia. In addition to requesting judgment for a principal balance in the amount of $15,917.46, the complaint also requested interest in the amount of $1,278.54, attorney's fees of $800, late charges of $75.54, and costs of suit and title search of $560. The Debtor did not contest the foreclosure proceeding, and Long Beach took a judgment against her by default. As a result, damages were assessed against the Debtor for a total of $19,044.77, including interest and late charges owed through February, 1997. The Debtor's house was scheduled to be sold at sheriff's sale on May 5, 1997. Which was stayed when the Debtor filed bankruptcy on May 1.

Long Beach's proof of claim specifies a reinstatement amount of $6,389.08.[2] The Debtor first asserts that the arrearage is improperly calculated. Correctly calculated, the Debtor claims nine rather than twelve missed monthly payments for a total arrearage of $2,002.14, including late fees. Next the Debtor takes issue with the various fees and costs claimed by Long Beach. The Debtor argues that several components of the fees and costs were not supported by the evidence. In the end, the Debtor admits to

liability for fees and costs totaling $810, including $250 for legal fees, $200 for a title search and $360 for the cost of the foreclosure action. Finally, the Debtor asserts that she is entitled to recoup $2,000 against the claim based on a TILA violation.[3] The Debtor alleges that Long Beach violated TILA, 15 U.S.C. § 1638(a)(2)(B), by failing to provide her with an itemization of the amount financed or even a disclosure statement informing her of the right to have an itemization upon request. Based on this violation the Debtor asks for statutory damages in the amount of $2,000 under § 1640(a)(2)(A).

With respect to the Debtor's argument on the miscalculation of arrears and objection to fees and costs, Long Beach rests its case on the legal argument that the amount of these charges is determined by the foreclosure judgment which is *res judicata* and therefore immune from collateral attack.[4] With respect to fees and costs allegedly incurred after the judgment, Long Beach introduced no evidence to support this component of its claim. In connection with the TILA action, Long Beach argues that the Debtor did receive an itemization of the amount financed

**2.** The claim is itemized as follows:

| | | |
|---|---|---|
| 12 monthly payments at $209.87 each (from 6/96 to 5/97) | | $2,518.44 |
| Late Charges | | 151.08 |
| Property inspection | | 45.00 |
| | Sub–Total: | $2,715.42 |
| | | |
| Filing Fees | | $ 181.75 |
| Sheriff Service Fees | | 120.00 |
| Sheriffs Sale Fee | | 921.41 |
| Title Search & Report | | 290.00 |
| Pa Rule 3129 Notice | | 50.00 |
| Legal Fees | | 900.00 |
| | Sub–Total Fees and Costs: | $2,463.16 |
| | | |
| Total Interest at $8.5% over 60 months | | $1,210.50 |
| | | |
| | **Total:** | **$6,389.08** |

**3.** The Debtor also objected to Long Beach's entitlement to interest on arrears. However, Long Beach conceded that objection at trial recognizing that the mortgage was granted after the 1994 amendments to the Bankruptcy Code and the amended § 1322(e) precludes such a charge.

**4.** Not surprisingly, Long Beach does not claim the applicability of res judicata as a bar to the

Debtor's TILA claim. *Apaydin v. Citibank Federal Savings Bank (In re Apaydin)*, 201 B.R. 716, 721 (Bankr.E.D.Pa.1996) (as truth-in-lending claim may not be raised as a counterclaim in a foreclosure proceeding, res judicata does not bar litigation in subsequent proceeding)

in the settlement statement provided to her at closing. Long Beach did not introduce the settlement statement into evidence, but attached a copy to its brief.[5]

Despite the fact that this adversary proceeding was pending, the Debtor was able to achieve confirmation of her plan on January 22, 1998 which requires her to make current monthly payments directly to Long Beach and also to make payments to the Chapter 13 Trustee for the purpose of distribution to creditors, including Long Beach for the arrears. The plan provides that upon full payment of the arrears the Debtor's mortgage will be reinstated as if there had never been a default.

## DISCUSSION

### I.

The first issue that must be resolved is whether the doctrine of *res judicata* precludes this Court from considering the Debtor's objections to the amount of Long Beach's claim for arrears and fees and costs. Where, as here, a final judgment has been entered by the state court, the full faith and credit statute, 28 U.S.C. § 1738, requires that such judgment be accorded the same respect and finality in federal court it would receive in its state of origin. *See also Heiser v. Woodruff,* 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946). In Pennsylvania,

> the doctrine of *res judicata* provides that a final valid judgment on the merits by a court of competent jurisdiction precludes any future action between the parties and their privies on the same cause of action.... A judgment is deemed final for purposes of *res judicata* or collateral estoppel unless or until it is reversed on appeal.... For *res judicata* to apply, the prior and present cases must share four "identities": (1) identity of the thing sued

upon or for; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the capacity of the parties to sue or be sued.... Further, *res judicata* bars subsequent litigation not only of issues litigated in the first proceeding but also issues which should have been previously litigated, if they were part of the same cause of action.... Causes of action may be considered identical when, in both the current and prior proceedings, the subject matter and the ultimate issues are the same.

*Philadelphia Fraternal Order of Correctional Officers v. Rendell,* 701 A.2d 600, 607 (Pa.Cmwlth.Ct.1997) (citations omitted).

Agreeing on the legal test, Debtor and Long Beach rather focus on its application, specifically disagreeing as to whether Debtor's objection presents the same "thing sued for" or cause of action as determined in the previous foreclosure proceeding. Debtor contends that judgment for the accelerated amount of mortgage indebtedness did not determine the amount of missed payments and that at most the Complaint indirectly alludes to the number of payments missed by claiming late charges and interest for the period June through November period. Exhibit P–3 ¶ 6. Finally, Debtor states that the amount of missed payments is not essential to the judgment in foreclosure but rather it is the fact of missed payments evidencing a default which supports acceleration of the mortgage. Plaintiff's Post–Trial Brief at 4–5. Long Beach argues that the foreclosure complaint alleged that "certain payments were in default and that said default required a judgment for the amounts due on the mortgage."[6] From this, it contends that the "issues are identical." Defendant's Post–Trial Brief at 2 (unnumbered).

---

5. Long Beach argues that the court should consider the settlement statement as presented as evidence because it was taken by surprise by the Debtor's itemization argument. Because the Debtor's argument under TILA is unsuccessful on other grounds, this request need not be ruled upon. I note, however, that the itemization argument was identified in the Debtor's pretrial statement and, even if it were not, it is never proper trial procedure to seek admission of documentary evidence by attaching it to a brief.

6. Long Beach's brief takes a liberal view of the allegations it made. The Complaint clearly did not seek a judgment for the amount of the allegedly missed payments nor is the amount of those missed payments determined by reference to the total foreclosure judgment or any of the elements thereof.

■ In making their arguments, however, both parties have failed to address a procedural aspect to this case. Although the parties to the objection are the same [7] as in the foreclosure case, their roles are reversed in this proceeding; the Debtor is now the plaintiff and Long Beach is the defendant. Accordingly, I am also mindful of the principles applicable to the assertion of counterclaims by a party who was formerly a defendant in an action between the same parties. These principles are framed in Section 22 of the Restatement (Second) of Judgments (the "Restatement").[8] The general rule therein is that the failure to assert a counterclaim in a prior action is not a bar to the assertion of the claim in a subsequent action unless a compulsory counterclaim rule is applicable or the counterclaim will undermine a prior judgment. The rationale for the rule is to allow parties the freedom to assert claims at the time and place of their choosing, rather than being limited to the forum chosen by an opponent. Restatement § 22, comment a.

These principles were applied in *Del Turco v. Peoples Home Savings Association*, 329 Pa.Super. 258, 478 A.2d 456 (1984). The plaintiffs in *Del Turco* were previously defendants in a foreclosure action. The creditor in the foreclosure had taken a default judgment against the Del Turcos and caused investment property they owned to be sold at a sheriff's sale. Thereafter the Del Turcos filed a lender liability action against the creditor asserting a variety of claims. Among other things, the Del Turcos argued that the creditor failed to credit excess funds to their loan balance, charged the debtors' loan account for electric payments that the debtors themselves claimed to have paid, and charged the debtors excessive attorney's fees for the foreclosure action. The creditor objected to the lender liability action on the basis of *res judicata*, asserting that the debtors' counterclaims were barred by the foreclosure judgment.

Following Section 22 of the Restatement, the court held that the Del Turcos' claims would undermine the prior foreclosure judgment because they were challenging the amount of the debt established thereby.

In the instant matter, [the Del Turcos ("appellants") ] present a restitutionary theory of recovery that, in essence, challenges the amount of debt paid [the creditor] pursuant to judgment in the mortgage foreclosure action. In Counts I, [and] II, recovery of sums allegedly neither paid by [the creditor] to [the electric company] nor properly credited to appellants' mortgage loan account is sought. In Count III, recovery of an amount in excess of what appellants allege to have been the reasonable value of attorney's services rendered in the mortgage foreclosure action is demanded. Clearly, the litigation of these counts, if successful, would operate to undermine the initial judgment of [the creditor].

*Id.*, 329 Pa.Super. at 272, 478 A.2d at 463.

■ Applying the foregoing principles to the present case, I find that Debtor may litigate the issue of her mortgage arrears as that matter was not the "thing sued upon" in the foreclosure action and is subject to the

---

**7.** Edward Sparkman, Esquire, the standing Chapter 13 trustee was not a party to the foreclosure action, but is listed as a party plaintiff to the objection. Aside from the inclusion of the Chapter 13 trustee as a nominal plaintiff, it is clear that he is seeking no relief thereunder. Indeed the complaint, which is signed only by the Debtor's attorney and not by anyone by or on behalf of Mr. Sparkman, concludes with *debtor's* prayer to disallow the claim and grant *debtor* recoupment and costs.

**8.** That section reads:
**§ 22. EFFECT OF FAILURE TO INTERPOSE COUNTERCLAIM**
   (1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).
   (2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:
    (a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or
    (b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.
Restatement (Second) Judgments § 22 (1982).

general rule regarding the permissive filing of counterclaims.

The starting point for my analysis is with the Debtor's Chapter 13 plan since the effect of the judgment varies by reason of the type of plan proposed. As noted by the Court in *In re Rorie*, 98 B.R. 215 (Bankr.E.D.Pa. 1989):

> If the debtor proposes to cure the mortgage arrearage, she has decided to deaccelerate the mortgage default. *See Matter of Roach*, 824 F.2d 1370 (3d Cir.1987). Upon the successful completion of her plan, her mortgage is reinstated as if there had been no prior default and the effect of the prepetition judgment is extinguished. *See In re Smith*, 92 B.R. 127, 130 (Bankr. E.D.Pa.1988); *In re Bertsch*, 17 B.R. 284 (Bankr.N.D.Ohio 1982). Any attempt to cure the prepetition mortgage arrearage requires that all missed prepetition payments be made along with late charges and other costs permitted to be assessed by the mortgage agreement; in essence, the debtor is choosing to repay the loan under the terms of the mortgage contract, including its interest rate. *Id.* However, if the debtor proposes to pay the creditor's allowed secured claim in full, the judgment does affect the amount of that claim. The entry of judgment merges the obligation on the mortgage into the judgment. *See In re Smith; In re Herbert*, 86 B.R. 433 (Bankr.E.D.Pa.1988). *See also In re Ocasio*, 97 B.R. 825, 826 n. 1 (Bankr.E.D.Pa. 1989) (Twardowski, C.J.); *In re McKillips*, 81 B.R. 454 (Bankr.N.D.Ill.1987) (discussing Illinois law).

*Id.* at 218–19. *See also Blakeney v. Benefact Mortgage (In re Blakeney)*, 126 B.R. 449, 456 (Bankr.E.D.Pa.1991) (merger doctrine has relevance when considering a claim of the mortgagee for the entire balance due but has no relevance to calculation of mortgage arrears). In the instant case, the Debtor, as noted above, has proposed a cure rather than full payment plan.

*Rorie* and *Blakeney* stand for the proposition that the entry of a foreclosure judgment does not prevent this Court from separately determining Long Beach's claim for arrears. Although the entry of the foreclosure judgment is binding on Debtor for the purpose of ruling on Long Beach's entire claim, it is not binding with respect to the determination of the amount necessary to cure a default. As the court in *Rorie* explained, when a debtor proposes to cure a default he is choosing to deaccelerate the mortgage and repay the missed payments and other charges due thereunder as if the mortgage was still in effect. *Rorie*, 98 B.R. at 218. Thus, these amounts have to be determined by reference to the mortgage regardless of the fact that it was deemed to have merged into the creditor's foreclosure judgment. *Id.* If the cure is successful, the mortgage will be reinstated as if there had never been a default.

If this proceeding required a determination of the amount necessary to satisfy the entire mortgage debt over the life of the plan, the amount established by the judgment would be the starting point from which all subsequent calculations would be made. However, that amount is not at issue in this proceeding which instead is focused upon a determination of the Debtor's arrears. The entry of a judgment fixing a cure amount will establish new rights in connection with the Debtor's bankruptcy proceeding by determining the amount necessary to cure and reinstate the mortgage. Unlike *Del Turco*, where the Debtor was seeking a judgment against the creditor that would change the total amount of indebtedness due the creditor, a judgment establishing a cure amount, as sought by the Debtor here, only determines the amount necessary to reinstate the mortgage and leaves the creditor's foreclosure judgment intact.

It is true that upon curing her default the Debtor's mortgage will be reinstated and Long Beach's foreclosure judgment will correspondingly be nullified. That result, however, flows from the effect of the bankruptcy proceeding in conjunction with Act 6 and not as a result of the determination of a cure amount. Act 6 expressly provides that when a cure is consummated the debtor's mortgage is restored to the same position as if there had never been a default. 41 P.S. § 404. Under Chapter 13 a cure may be affected pursuant to the terms of a Chapter 13 plan. 11 U.S.C. § 1322(b)(3). Thus, irrespective of

the manner in which the Debtor's arrearage is determined, the foreclosure judgment will be nullified following a successful cure. But this result comes about as a function of the substantive law rather than as a unique consequence of a judgment separately determining the cure amount. Moreover, a judgment which determines the amount necessary for the Debtor to cure her default and reinstate her mortgage does not nullify the foreclosure judgment or impair Long Beach's rights thereunder. Unless and until a cure is effected, the judgment remains a valid ruling on Long Beach's right to foreclose and constitutes a final and binding determination of the full amount owed by the Debtor to pay off the mortgage.

■ The issue with respect to the cure amount of fees and costs at first blush may appear to compel a different result because unlike the amount of arrears which was never determined in the foreclosure action,[9] fees and costs are a component of the mortgage judgment entered. However, I find that the above principles are equally applicable because the litigation of fees and costs would not "nullify the initial judgment or impair rights established in the initial action." *Del Turco,* 329 Pa.Super. at 272, 478 A.2d 456 (*quoting* Restatement § 22(b)). Moreover, since the judgment was entered by default, the amount of fees and costs, even if subsumed in the judgment, was never litigated, precluding the applicability of the doctrine of collateral estoppel. *Martin v. Poole,* 232 Pa.Super. 263, 336 A.2d 363 (1975) (when an action is brought against a defendant who is served but fails to appear and answer and judgment by default is entered, the judgment is conclusive as to the cause of action sued upon but in a subsequent suit based on a different cause of action, it is not conclusive as to the truth of the allegations in the complaint) (*quoting* Restatement of Judgments, Comment f to § 68.)

The case of *Werts v. Federal National Mortgage Association,* 48 B.R. 980 (E.D.Pa. 1985), cited by Long Beach broadly in support of its *res judicata* argument, does not compel a different result. At issue, as here, was the debtor's objection to the mortgagee's proof of secured claim. The court in *Werts* ruled that the creditor's Act 6 notice was defective but determined nevertheless that it was powerless to eliminate attorney's fees and costs from the creditor's claim since they were based on a valid foreclosure judgment that could not be attacked on the basis of an argument that should have been raised as a defense in the foreclosure action. The opinion does not reveal whether the Chapter 13 plan was a cure or payment plan or whether the judgment was actually litigated. Under a payment plan or if the amount of costs and fees were actually litigated, the court's refusal to allow reconsideration of costs and fees is quite understandable. Those situations are far different from this case where the judgment was secured without litigation foreclosing issue preclusion and the cause of action is for the cure of arrears foreclosing claim preclusion.

## II.

### (a.)

■ I now turn to the merits of the Debtor's objection. Long Beach's proof of claim is deemed to be *prima facie* evidence of the indebtedness. Upon filing an objection, the Debtor bears the burden of going forward and presenting evidence to rebut, or cast doubt upon, the creditor's proof of claim. *In re Allegheny International, Inc.,* 954 F.2d 167, 173–74 (3rd Cir.1992). The Debtor's burden is to,

> produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim . . . .

---

9. I reject Long Beach's argument to the contrary. The reference to late charges and interest for specified months and the inclusion of those late charges and interest in the judgment is a far cry from an allegation that certain monthly payments are in default. The amount of the arrears was not determined by the judgment nor was it essential to the judgment. Thus, principles of res judicata are inapplicable.

**244**

*Id.* When and if the objector satisfies the obligation of going forward, the burden of proof shifts to the creditor to prove·the claim by a preponderance of the evidence. *Id.*

In this case, the Debtor has met her burden of going forward. The Debtor produced rather conclusive evidence, in the form of Long Beach's own statements, demonstrating that she made six payments to Long Beach for the months of March to August, 1996. It follows then that the Debtor was in arrears from September, 1996, to May, 1997, when she filed bankruptcy. This is· a nine month period for which the Debtor owes back mortgage payments. The Debtor's monthly mortgage payment, including late fee, is $222.46, which multiplied by nine equals $2,002.14, representing the sum total of the Debtor's missed mortgage payments for the prepetition period.

Long Beach's proof of claim also seeks certain additional sums including a property inspection fee ($45), filing fees ($181.75), sheriffs service fees ($120), sheriffs sale fee ($921.41), title search and report fee ($290), a "Pa Rule 3129 Notice" fee ($50), and attorney's fees ($900). Debtor has challenged those fees and costs as excessive and not actually incurred. Long Beach presented no evidence to directly support any of these expenditures, relying rather on its *res judicata* argument. While Long Beach introduced Exhibit D–1 which contains an assessment of damages indicating an expenditure of $560 for the costs of suit and title search and $800 for attorney's fees, it provided little more evidentiary value than the proof of claim itself. ·None of the other items listed above are reflected in the assessment of damages, and I have difficulty harmonizing the proof of claim with Exhibit D–1.

▬ The Debtor agrees that Long Beach incurred some fees for which she is liable. She agrees to reimbursable expenses of $560 for the cost of the sheriff's sale and title search as disclosed in the assessment of damages as well as $250 for attorney's fees. In the absence of other evidence, and in recognition of the Debtor's agreement, Long Beach shall be allowed $560 for these expenditures. *See In re McMillan,* 182 B.R. 11, 14–15 (Bankr.E.D.Pa.1995) (limiting unsup-

ported fees and costs to amounts debtor did not dispute). Attorney's fees would normally be derived through the application of a lodestar analysis in which the time the attorney spent on a case is multiplied by a reasonable hourly rate and then adjusted up or down to account for other relevant factors. *Id.; In re Smith,* 76 B.R. 426, 431 (Bankr.E.D.Pa.1987); Since no evidence of this nature was presented in this case, there is no basis to increase the allowed attorney's fees to $900. As to the other fees being challenged by Debtor as unreasonable or not actually incurred, Long Beach's failure of proof requires their denial.

**(b.)**

▬ The Debtor seeks to have the Court reduce Long Beach's attorney's fees even further by arguing that Long Beach sent her an erroneous Act 6 notice. The Debtor is correct that the Act 6 notice she received was inaccurate. It reflected that she was in arrears by six months when in fact she was only in arrears by half that amount. The notice constitutes a clear violation of Act 6 which required Long Beach to send the Debtor notice of the "exact" amount by which she was behind. 41 P.S. § 403(c)(3); *Bankers Trust Company v. Foust,* 424 Pa.Super. 89, 621 A.2d 1054 (1993). Based on this violation, the Debtor argues that Long Beach's claim for attorney's fees should be eliminated. In *Vitelli v. Cheltenham Federal Savings and Loan Ass'n (In re Vitelli),* 93 B.R. 889 (Bankr. E.D.Pa.1988), the court considered the impact of an Act 6 violation on the assessment of attorney's fees. The court concluded that the existence of a violation did not mandate the reduction of attorney's fees but was just one of many factors to consider in determining the amount of fees it is reasonable for a debtor to pay. *Id.* at 898. Applying this analysis in the present case, I conclude that $250 is a reasonable attorney's fee even in light of the Act 6 violation. At $250 the fee in this case is so modest it does not need to be reduced further to account for the issuance of an erroneous Act 6 Notice.

**(c.)**

Next the Debtor asserts that she is entitled to recoup $2,000 against Long Beach's

claim by virtue of a TILA violation. On this issue the Debtor argues that Long Beach violated TILA by failing to provide her with an itemization of the amount financed and that she is therefore entitled to a credit of $2,000 in statutory damages. Long Beach responds by asserting that it is not in violation of TILA because an itemization of the amount financed was included in the settlement statement the Debtor received at closing.

■ There is a degree of merit to the Debtor's argument because TILA specifically requires a creditor to provide written notification to a consumer of the right to receive an itemization of the amount financed. 15 U.S.C. § 1638(a)(2)(B). According to TILA, the notification must contain a space for the consumer to indicate either affirmatively or negatively whether she wants an itemization. If an affirmative response is indicated, then an appropriate disclosure must be made. *Id.* In the present case, neither the disclosure statement nor any other document presented in connection with the loan notified the Debtor of her right to receive an itemization and indicate whether she wanted one. The fact that the Debtor received the same information in the settlement statement probably does not cure the violation because TILA requires the disclosures to be made in a clear and conspicuous manner, separate from all other information provided in connection with a credit transaction. *Id.* § 1638(b). Ultimately, I do not need to address this issue because the particular violation in question does not give rise to a claim for statutory damages, and the Debtor has not proven she suffered any actual damages.

The receipt of damages under TILA is governed by section 1640. 15 U.S.C. § 1640. Subsection 1640(a)(2)(A) states the general rule that statutory damages may be recovered for a violation of TILA in the amount of twice the finance charge. *Id.* § 1640(a)(2)(A)(i). In the case of a transaction involving a lien on real estate, statutory damages cannot be less than $200 or greater than $2,000. *Id.* § 1640(a)(2)(A)(iii). However, this apparently liberal grant of statutory damages is then limited by the contents of an unnumbered paragraph following subsection 1640(a)(4). Midway through this paragraph TILA states,

[i]n connection with the disclosures referred to in section 1638 of this title [related to, among other things, the finance charge and the itemization thereof], a creditor shall have a liability determined under paragraph (2) [the statutory damages provision] only for failing to comply with the requirements of . . . paragraph (2) (*insofar as it requires a disclosure of the "amount financed"*), (3), (4), (5), (6), or (9) of section 1638(a) of this title. . . .

*Id.* § 1640(a) (emphasis added). Thus, pursuant to this sentence, the statutory damages provided in subsection 1640(a)(2) are available for violations of section 1638(a)(2) only in so far as the violation concerns the disclosure of the amount financed. Violations of section 1638(a)(2) relating to the disclosure of the itemization of the amount financed are not covered, making statutory damages unavailable for a violation of that nature. In the present case, then, even if Long Beach's disclosure of the itemization of the amount financed was nonconforming the Debtor is entitled to no damages. Statutory damages are unavailable for the type of violation alleged, and the Debtor has proven no actual damages. Accordingly, the Debtor's claim to recoup $2,000 against her arrears must be denied. As the Debtor has not prevailed in establishing liability, she is also not entitled to costs. *Id.* § 1640(a)(4).

**(d.)**

■ Finally, I will deny the Debtor's request to amend her complaint to include a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 et seq. (which because it regulates unfair and deceptive acts and practices is commonly referred to as "UDAP"). A request to amend a complaint is required to be made by motion and not in a pre-trial statement. *See* F.R.B.P. 7015 (incorporating F.R.C.P. 15); F.R.C.P. 15(a) (requiring leave of court to amend complaint after an answer is filed). The Debtor has not made a motion to amend her complaint.

■ Moreover, on the merits, the Debtor does not have a claim under UDAP. A pri-

vate right of action under UDAP may only be asserted by a person who has suffered an ascertainable loss of money or property as a result of a violation. In this instance, even accepting that Long Beach's Act 6 notice was deceptive under 73 P.S. § 201–2(4)(xxi), the Debtor has not proven she suffered any loss traceable to the violation. For instance, the Debtor did not pay Long Beach an excessive sum to attempt to cure her default or demonstrate that she incurred additional costs as a result of Long Beach's failure to accept a cure in the correct amount. Without such a showing, no claim under UDAP can inure to the Debtor's benefit.

## CONCLUSION

Long Beach's claim for arrears will be allowed in the amount of $2812.14, consisting of $2,002.14 for missed mortgage payments and late charges, $250 for attorney's fees and $560 for the costs of suit and a title search. All other sums sought by Long Beach in its proof of claim for arrears are denied.

An order consistent with this Opinion will be entered.

### ORDER

AND NOW, this 14th day of April, 1998, upon consideration of the Debtor's Complaint objecting to the Proof of Claim filed by Long Beach Mortgage Company ("Long Beach"), following a trial on the merits, and for the reasons set forth in the accompanying Opinion;

It is hereby **ORDERED** and **DECREED**:

1. Long Beach is **allowed** a secured claim for arrears in the total amount of $2812.14, which is the amount necessary for Long Beach to receive from the Debtor for mortgage to be reinstated. Long Beach's claim for arrears is **disallowed** to the extent it exceeds that amount.

2. The Debtor's request for recoupment based on a violation of the Truth–In–Lending Act, 15 U.S.C. § 1638, is **DENIED.**[1]

3. The Debtor's request to amend her complaint to include a cause of action under

1. As this Order was being finalized, I received a letter from Debtor's counsel withdrawing this

the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 et seq., is **DENIED.**